**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X   Case No. 21-cv-10987

MARCUS ANDRE DODD,

                  Plaintiff,                              **AMENDED COMPLAINT**

          - against -

                                                    **PLAINTIFF DEMANDS**
                                                    **A TRIAL BY JURY**

MY SISTERS' PLACE, INC. and
KAREN CHEEKS-LOMAX, *Individually*, and
THOMAS RICE, *Individually*, and
ROBERT R. GHEEWALLA, *Individually*, and
SUZANNE SIEDEN, *Individually*, and
BARBARA RAHO, *Individually*, and
EVAN J. COHEN, *Individually*, and
LINDA PURVIS, *Individually*, and
HILARY TOUHY, *Individually, and*
BARBARA RAHO, *Individually*, and
CHERYL GREENBERG, *Individually*, and
PETER CUTAIA, *Individually*, and
MARIA FAUSTINO, *Individually*, and
DANIA JONES-BROWN, *Individually*, and
CHRISTINA DEBONIS, *Individually*,

                           Defendants.
-------------------------------------------------------------------X

        Plaintiff MARCUS ANDRE DODD (hereinafter "Plaintiff" or "Plaintiff DODD") hereby complains of

Defendant MY SISTERS' PLACE, INC. ("Defendant MY SISTERS' PLACE"), Defendant KAREN

CHEEKS-LOMAX ("Defendant CHEEKS-LOMAX"), Defendant THOMAS RICE ("Defendant RICE"),

Defendant ROBERT R. GHEEWALLA ("Defendant GHEEWALLA"), Defendant SUZANNE SIEDEN

("Defendant SIEDEN"), Defendant BARBARA RAHO ("Defendant RAHO"), Defendant EVAN J. COHEN

("Defendant COHEN"), Defendant LINDA PURVIS ("Defendant PURVIS), Defendant HILARY TOUHY

("Defendant TOUHY"), Defendant CHERYL GREENBERG ("Defendant GREENBERG"), Defendant

PETER CUTAIA ("Defendant CUTAIA"), Defendant MARIA FAUSTINO ("Defendant FAUSTINO"),

Defendant DANIA JONES-BROWN ("Defendant JONES-BROWN"), Defendant CHRISTINA DEBONIS

("Defendant DEBONIS"),  upon personal knowledge, as well as upon information and belief, by alleging and averring as follows:

## NATURE OF THE CASE

1.    Plaintiff DODD brings this action alleging that Defendants have violated Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"); 42 U.S.C. § 1981 ("Section 1981"); the New York State Human Rights Law, New York State Executive Law § 296, *et seq.* ("NYSHRL"); and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), as amended by the ADA Amendments Act of 2008 (Pub. L. No. 110-325) ("ADAAA"), and seeks damages to redress the injuries he has suffered as a result of being subjected to discrimination on the basis of his race (Black) and his disability (high blood pressure) and retaliation for complaining of race discrimination.

## JURISDICTION, VENUE AND PROCEDURAL PREREQUISITES

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981, and 42 U.S.C. §§ 12101, *et seq.*

3.    This Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

4.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as the Defendants reside within the Southern District of New York and a substantial part of the events or omissions giving rise to the claim occurred therein.

5.    By timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 25, 2021, receiving a Notice of Right to Sue from the EEOC on December 2, 2021; and commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action.  A copy of the Notice of Right to Sue is being submitted to the Court along with this complaint.

## THE PARTIES

6.     For a substantial part of the events or omission giving rise to this complaint, Plaintiff DODD was a resident of the State of New York and County of Westchester.

7.     At all times relevant hereto, Defendant MY SISTERS' PLACE, INC. (hereinafter "Defendant" or "Defendant MY SISTERS' PLACE") was and is an active domestic not-for-profit corporation existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 3 Barker Avenue, White Plains, New York 10601.

8.     At all times relevant hereto, Defendant CHEEKS-LOMAX was and is an individual residing in the State of New York, as well as the Chief Executive Officer ("CEO") of Defendant MY SISTERS' PLACE. As such, she had the authority to affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision-making regarding same.

9.     At all times relevant hereto, Defendant RICE was and is an individual residing in the State of New York, as well as Co-Chair of the Board of Directors of Defendant MY SISTERS' PLACE. As such, he had the authority to affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision-making regarding same.

10.    At all times relevant hereto, Defendant RICE was and is an individual residing in the State of New York, as well as a member of the Finance Committee of the Board of Directors of Defendant MY SISTERS' PLACE. As such, he had the authority to affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision-making regarding same.

11.    At all times relevant hereto, Defendant RICE, as a member of the Board of Directors of Defendant MY SISTERS' PLACE, had the fiduciary responsibility to oversee management, finances, and quality, including compliance with all applicable laws and regulations.

12.    At all times relevant hereto, Defendant SIEDEN was and is an individual residing in the State of New York, as well as Co-Chair of the Board of Directors of Defendant MY SISTERS' PLACE. As such, she had the authority to affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision-making regarding same.

13.     At all times relevant hereto, Defendant SIEDEN was and is an individual residing in the State of New York, as well as a member of the Finance Committee of the Board of Directors of Defendant MY SISTERS' PLACE. As such, she had the authority to affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision-making regarding same.

14.     At all times relevant hereto, Defendant SIEDEN, as a member of the Board of Directors of Defendant MY SISTERS' PLACE, had the fiduciary responsibility to oversee management, finances, and quality, including compliance with all applicable laws and regulations.

15.     At all times relevant hereto, Defendant RAHO was and is an individual residing in the State of New York, as well as the Treasurer of the Board of Directors of Defendant MY SISTERS' PLACE. As such, she had the authority to affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision-making regarding same.

16.     At all times relevant hereto, Defendant RAHO was and is an individual residing in the State of New York, as well as a member of the Finance Committee of the Board of Directors of Defendant MY SISTERS' PLACE. As such, she had the authority to affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision-making regarding same.

17.     At all times relevant hereto, Defendant RAHO, as a member of the Board of Directors of Defendant MY SISTERS' PLACE, had the fiduciary responsibility to oversee management, finances, and quality, including compliance with all applicable laws and regulations.

18.     At all times relevant hereto, Defendant GHEEWALLA was and is an individual residing in the State of New York, as well as the Secretary of the Board of Directors of Defendant MY SISTERS' PLACE. As such, he had the authority to affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision-making regarding same.

19.     At all times relevant hereto, Defendant GHEEWALLA was and is an individual residing in the State of New York, as well as a member of the Finance Committee of the Board of Directors of Defendant MY

SISTERS' PLACE. As such, he had the authority to affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision-making regarding same.

20.     At all times relevant hereto, Defendant GHEEWALLA, as a member of the Board of Directors of Defendant MY SISTERS' PLACE, had the fiduciary responsibility to oversee management, finances, and quality, including compliance with all applicable laws and regulations.

21.     At all times relevant hereto, Defendant COHEN was and is an individual residing in the State of New York, as well as a member of the Board of Directors of Defendant MY SISTERS' PLACE. As such, he had the fiduciary responsibility to oversee management, finances, and quality, including compliance with all applicable laws and regulations.

22.     At all times relevant hereto, Defendant PURVIS was and is an individual residing in the State of New York, as well as a member of the Board of Directors of Defendant MY SISTERS' PLACE. As such, she had the fiduciary responsibility to oversee management, finances, and quality, including compliance with all applicable laws and regulations.

23.     At all times relevant hereto, Defendant PURVIS was and is an individual residing in the State of New York, as well as a member of the Finance Committee of the Board of Directors of Defendant MY SISTERS' PLACE. As such, she had the authority to affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision-making regarding same.

24.     During a majority of the time relevant hereto, Defendant TOUHY was and is an individual residing in the State of New York, as well as a member of the Board of Directors of Defendant MY SISTERS' PLACE. As such, she had the fiduciary responsibility to oversee management, finances, and quality, including compliance with all applicable laws and regulations.

25.     At all times relevant hereto, Defendant GREENBERG was and is an individual residing in the State of New York, as well as the Chief Development Officer of Defendant MY SISTERS' PLACE and a member of the Senior Team of Defendant MY SISTERS' PLACE. As such, she had the authority to affect the

terms and conditions of Plaintiff's employment or to otherwise influence the decision-making regarding same.

26.     At all times relevant hereto, Defendant CUTAIA was and is an individual residing in the State of New York, as well as the Controller of Defendant MY SISTERS' PLACE. As a result of Defendant CUTAIA's role within the Finance Department of Defendant MY SISTERS' PLACE, he had the authority to affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision-making regarding same.

27.     At all times relevant hereto, Defendant FAUSTINO was and is an individual residing in the State of New York, as well as the Grants and Contracts Manager of Defendant MY SISTERS' PLACE. As a result of Defendant FAUSTINO's role within the Finance Department of Defendant MY SISTERS' PLACE, she had the authority to affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision-making regarding same.

28.     At all times relevant hereto, Defendant JONES-BROWN was and is an individual residing in the State of New York, as well as the Accounts Payable and Human Resources Manager of Defendant MY SISTERS' PLACE. As a result of Defendant JONES-BROWN's role within the Finance Department of Defendant MY SISTERS' PLACE, she had the authority to affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision-making regarding same.

29.     At all times relevant hereto, Defendant DEBONIS was and is an individual residing in the State of New York, as well as the Billing Specialist of Defendant MY SISTERS' PLACE. As a result of Defendant DEBONIS's role within the Finance Department of Defendant MY SISTERS' PLACE, she had the authority to affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision-making regarding same.

30.     Defendant MY SISTERS' PLACE is subject to all statutes upon which Plaintiff DODD is proceeding herein.

31.     At all times relevant hereto, Defendant MY SISTERS' PLACE was Plaintiff DODD's employer under

Title VII.

32. At all times relevant hereto, Defendant MY SISTERS' PLACE was Plaintiff DODD's employer under Section 1981.

33. At all times relevant hereto, Defendant MY SISTERS' PLACE was Plaintiff DODD's employer under the NYSHRL.

34. At all times relevant hereto, Defendant MY SISTERS' PLACE was Plaintiff DODD's employer under the ADA.

35. At all times relevant hereto, Defendant MY SISTERS' PLACE was Plaintiff DODD's employer under the ADAA.

## MATERIAL FACTS

36. The most recent version of Defendant MY SISTERS' PLACE's employee handbook is dated February 1, 2016.  This handbook is significantly out of date and is not in compliance with the current laws, regulations, and statutes pertaining to discrimination and harassment.

37. During Plaintiff DODD's employment, Defendant MY SISTERS' PLACE provided no training to its staff, management, or Board of Directors with respect to the current laws, regulations, and statutes pertaining to discrimination and harassment.

38. Specifically, Defendant MY SISTERS' PLACE provide no updates or training to its staff, management, and Board of Directors with respect to the 2020 and 2021 amendments to the New York State Human Rights Law.

39. Further, Defendant MY SISTERS' PLACE did not create or update a sexual harassment prevention policy based the amendments to the New York State Human Rights Law and distribute it at training sessions as well as at the time hire for new employees and to members of the Board of Directors.

40. At the beginning of January 2021, Defendant CHEEKS-LOMAX shared with Plaintiff DODD that, as an African American woman, she had endured race-based harassment from multiple members of the Board of Directors, including Defendant RICE, the board's Co-Chair.

41.   Defendant CHEEKS-LOMAX shared a specific example of a situation where her working relationship with Defendant RICE because so tense and difficult that they discussed that their working relationship could not continue and that one of them had to leave Defendant MY SISTERS' PLACE.

42.   Defendant CHEEKS-LOMAX never provided an explanation about how she was able to continue working together with Defendant RICE, with neither leaving Defendant MY SISTERS' PLACE.

43.   Subsequently, around mid-January 2021, Plaintiff DODD led his first Finance Committee meeting as the CFO of Defendant MY SISTERS' PLACE.

44.   Immediately, Plaintiff DODD noticed that Defendant RICE was questioning Plaintiff unnecessarily and challenging many of Plaintiff's statements without reason.

45.   Specifically, Defendant RICE questioned Plaintiff DODD about the 3-year salary history of an employee, Winifred Wilson, despite Plaintiff only having been at the organization for only two months prior to that meeting.

46.   Shortly after the Finance Committee meeting, Plaintiff DODD discussed Defendant RICE's behavior with Defendant CHEEKS-LOMAX, who stated that Defendant RICE was treating Plaintiff poorly because Plaintiff "was not Betsy, the white woman CFO" who held the position prior to the Plaintiff.

47.   Defendant CHEEKS-LOMAX reiterated to Plaintiff DODD that she had been subjected to similar racially charged behavior by Defendant RICE for much of her tenure at Defendant MY SISTERS' PLACE.

48.   Plaintiff DODD complained to Defendant CHEEKS-LOMAX during this conversation that he felt that Defendant RICE's treatment of Plaintiff was racially motivated.

49.   However, Defendant CHEEKS-LOMAX did not indicate to Plaintiff DODD that she would be initiating any investigation into Plaintiff's complaint of race discrimination.

50.   After this conversation, Plaintiff DODD and Defendant CHEEKS-LOMAX would discuss Defendant RICE's continuing racially discriminatory behavior towards the Plaintiff and past racially discriminatory behavior towards Defendant CHEEKS-LOMAX on a nearly weekly basis.

51.     While Plaintiff DODD was thankful that Defendant CHEEKS-LOMAX was open with him about her own experiences and sympathetic of what Plaintiff was going through, he soon became frustrated that Defendant RICE's behavior was allowed to continue undeterred, despite his continuing complaints of discrimination to Defendant CHEEKS-LOMAX.

52.     Between approximately May 17, 2021 and May 20, 2021, Plaintiff DODD and Amy Siniscalchi, Chief Program Officer, met about salary changes that were made in Ms. Siniscalchi's department.

53.     Ms. Siniscalchi stated to Plaintiff DODD that her salary changes did not require his oversight because she had already approved them with Defendant CHEEKS-LOMAX.

54.     However, Plaintiff DODD explained to Ms. Siniscalchi that Defendant RICE expected him to know about all changes related to finance and that, because Defendant RICE was already so severely critical of him, he could not simply approve the changes without reviewing them.

55.     Because of this dispute, Plaintiff DODD and Ms. Siniscalchi requested a meeting with Defendant CHEEKS-LOMAX, so they could all discuss the salary changes together.

56.     On or about May 21, 2021, Plaintiff DODD met with Ms. Siniscalchi and Defendant CHEEKS-LOMAX.

57.     During this meeting, Plaintiff DODD discussed with Ms. Siniscalchi and Defendant CHEEKS-LOMAX "a few of the forms of unfair scrutiny and disrespect" to which Plaintiff had been subjected by Defendant RICE since Plaintiff joined Defendant MY SISTERS' PLACE.

58.     Plaintiff DODD disclosed Defendant RICE's unwarranted questioning of Plaintiff's decisions and an email that Defendant RICE had sent to Plaintiff and others at 4:08 AM on May 16, 2021.

59.     At this meeting, Ms. Siniscalchi made light of Plaintiff DODD's concerns by stating that Defendant RICE was "on" Plaintiff "like white on Rice," with Defendant CHEEKS-LOMAX laughing in response.

60.     Ms. Siniscalchi then concluded the meeting by acknowledging that Plaintiff DODD was being mistreated by Defendant RICE and offering to be as supportive as possible going forward.

61.     Defendant TOUHY complained to Defendant CHEEKS-LOMAX regarding the treatment of handling of race and race-related matters within My Sisters' Place.  Specifically, Defendant TOUHY complained

about the Anti-Racism Training which had been facilitated by Milta Vega-Cardona.  As a result of these complaints about race, Defendant TOUHY resigned from the her position on the Board of Directors of My Sisters' Place.

62.    Other members of the Board of Directors, including but not limited to Defendant RICE, Defendant SIEDEN, Defendant GHEEWALLA, Defendant RAHO, and Defendant PURVIS, also complained and made negative comments to Defendant CHEEKS-LOMAX regarding the Anti-Racism Training.

63.    Despite Defendant TOUHY's resignation and the other complaints regarding the handling of race and race-related matters within My Sisters' Place, no actions were taken by Defendant CHEEKS-LOMAX, Defendant RICE, or Defendant SIEDEN to identify and address the root causes of complaints regarding race within the organization.

64.    Then, on or about May 24, 2021, Plaintiff DODD sent out materials related to an upcoming May 26 budget meeting to the Finance Committee, which included Defendant RICE.

65.    In his email, Plaintiff DODD emphasized that the Committee should refrain from asking questions until the meeting because Plaintiff would be addressing the changes he was making to the budget process during the meeting.

66.    Defendant RICE ignored Plaintiff DODD and nearly immediately began responding to Plaintiff's email with questions.

67.    Then, on or about May 26, 2021, Plaintiff DODD had a meeting with Defendant RICE and Defendant CHEEKS-LOMAX to discuss Plaintiff's complaints about Plaintiff's belief that Defendant RICE was derailing the budget process by unfairly questioning Plaintiff about the budget at an inappropriate time.

68.    Defendant RICE did not apologize for his behavior and merely stated that he was asking "clarifications" and not "questions." Defendant CHEEKS-LOMAX did not challenge Defendant RICE's statement and did not take any further action.

69.     On or about June 1, 2021, Plaintiff DODD planned to further discuss Defendant RICE's conduct with Defendant CHEEKS-LOMAX during their standing weekly video meeting, but Defendant CHEEKS-LOMAX did not enter the call and provided no explanation for her absence.

70.     During the evening of June 1, Plaintiff DODD sent an email to Defendant CHEEKS-LOMAX and Ravyn Green, Ms. Lomax's Executive Assistant, about his concerns regarding Defendant RICE's behavior ("June 1 Complaint").

71.     In the email, Plaintiff DODD expressed disappointment that he was not able to discuss these issues with Defendant CHEEKS-LOMAX in person and that he was concerned about how Defendant RICE would treat Plaintiff going forward, after their May 26 meeting.

72.     Plaintiff DODD reiterated his complaints about Defendant RICE's behavior and indicated that he had informed Defendant CHEEKS-LOMAX on multiple prior occasions that Defendant RICE placed extra scrutiny on Plaintiff's work because he is not "Betsy, the former white woman CFO."

73.     Plaintiff DODD indicated that Defendant RICE had "intention[ally] derailed/sabotaged the budget process."

74.     Additionally, Plaintiff DODD stated that he had discussed with Defendant RICE that Defendant RICE's actions made Plaintiff feel disrespected on multiple occasions, most recently on May 26, when they had discussed Defendant RICE's inappropriate behavior regarding the budget process, but that Defendant RICE's behavior had not changed.

75.     Plaintiff DODD expressed his fear that Defendant RICE may retaliate by interfering with the budget review, which could cause Plaintiff to miss important budget-related deadlines.

76.     Plaintiff DODD added that, when he met with Defendant CHEEKS-LOMAX and Ms. Siniscalchi on May 21 to discuss his concerns about Defendant RICE, his complaint was laughed at as a joke.

77.     Plaintiff DODD then firmly stated, "Tom's racist behavior should not be a laughing matter, or something the organization continues to turn a blind eye to."

78.   Plaintiff DODD noted that Defendant MY SISTERS' PLACE had just completed hours of anti-racism and anti-oppression training, but that it seemed that Defendant RICE's persistent racist treatment of Plaintiff would be allowed to continue despite Plaintiff's concerns being acknowledged by Defendant CHEEKS-LOMAX on multiple prior occasions.

79.   Plaintiff DODD then pleaded, "This has to stop. Please help, as I love my job here at MSP, expect [sic] for my experiences and interactions with Tom which are unjust, race-based, and do not allow put me [sic] in a position to succeed with the Senior Team or the Board of Directors. Please help."

80.   Plaintiff DODD also complained in the email about Defendant CHEEKS-LOMAX's denial of Plaintiff's salary increase and indicated that it was his understanding that all Defendant MY SISTERS' PLACE employees who had been hired prior to March 1, 2021 received raises, except for Plaintiff.

81.   Defendant CHEEKS-LOMAX never responded to Plaintiff DODD's email.

82.   Defendant CHEEKS-LOMAX retained the services of Susan Markel and AlixPartners to perform an investigation into Plaintiff DODD to try to find and create evidence to which would later be used to cover-up the retaliatory termination of Plaintiff DODD.

83.   The retention of Susan Markel and AlixPartners was approved by Defendant RICE, Defendant SIEDEN, and Defendant RAHO.

84.   Defendant GREENBERG, Defendant CUTAIA, Defendant, JONES-BROWN, Defendant FAUSTINO, and Defendant DEBONIS participated in the investigation.

85.   On or about June 2, 2021, Plaintiff DODD was not feeling well and emailed Defendant CHEEKS-LOMAX that he would be taking a Wellness Day. During the day, Plaintiff felt his chest become inflamed and painful, so he sought medical attention.

86.   That evening, Plaintiff DODD had an appointment with a Telehealth physician who diagnosed Plaintiff with costochondritis, an inflammation of the cartilage that connects the ribs to the sternum, prescribed a topical ointment, and recommended that Plaintiff seek an in-person follow up appointment with a medical professional.

87.   The next day, on or about June 3, 2021, Plaintiff DODD's chest pains persisted.  As such, Plaintiff did not go to work and instead went to the White Plains Hospital emergency room.

88.   At the emergency room, the diagnosis of costochondritis was confirmed, but Plaintiff DODD was also diagnosed with high blood pressure. Plaintiff was instructed to stay home and rest.

89.   Plaintiff DODD provided a summary of his June 3 emergency room visit to Defendant JONES-BROWN, Defendant MY SISTERS' PLACE Human Resources and Accounts Payable Manager, and Tara McCullum, a Human Resources employee for Defendant MY SISTERS' PLACE's PEO (Professional Employment Organization), TriNet, which indicated that Plaintiff was to stay home and rest during that week.

90.   That same day, while Plaintiff DODD was still at home resting due to his costochondritis and high blood pressure, Plaintiff got an email from Tracey Levy, an independent investigator who informed Plaintiff that Defendant MY SISTERS' PLACE had retained her to investigate Plaintiff's allegations in his June 1 Complaint to Defendant CHEEKS-LOMAX.

91.   Plaintiff DODD responded that he wanted to reach out to an attorney before speaking to Ms. Levy, who replied that she understood.

92.   Plaintiff DODD ultimately did not reach out to an attorney at that time, as his health condition became more severe. Plaintiff informed Ms. Levy by email that he would not be reaching out to an attorney immediately.

93.   At the instruction of White Plains Hospital Emergency Room medical professionals, Plaintiff DODD did not attend work between June 2, 2021 and June 8, 2021.

94.   On June 8, 2021, Plaintiff DODD saw his primary care physician, who confirmed the diagnosis of high blood pressure, prescribed Plaintiff medication, and ordered Plaintiff to stay home and rest for an additional week.

95.   Plaintiff DODD provided an additional note to Defendant JONES-BROWN and Ms. McCullum indicating that he would be cleared to return to work on June 14, 2021.

96.     Plaintiff DODD then returned to work on June 14, 2021.

97.     On June 14, Plaintiff DODD asked Ms. McCullen about whether he would qualify for disability or FMLA for the time he had already taken off due to his medical condition.

98.     Plaintiff DODD also asked Ms. McCullen if he was required to fill out any paperwork due to his time off from work for medical reasons, but Ms. Cullen informed Plaintiff that there was no paperwork that he was required to complete.

99.     On the evening of June 14, Plaintiff DODD returned to the White Plains Hospital Emergency Room, as he began to have heart palpitations.

100.    Plaintiff DODD developed the heart palpitations shortly after receiving an email from Defendant CHEEKS-LOMAX regarding the budget indicating that she and the Finance Committee, which included Defendant RICE, were concerned about the delay in the process due to Plaintiff's medical situation.

101.    At the emergency room, Plaintiff DODD was advised to see a cardiologist later that day.  Emergency room professionals made an appointment for Plaintiff to see a cardiologist on June 15, 2021.

102.    At the appointment on June 15, the cardiologist determined that Plaintiff DODD's high blood pressure was situational and episodic, due to work-related stressors. The cardiologist warned that these stressors were causing Plaintiff's blood pressure to reach dangerous levels, and that these sudden increases in blood pressure could lead to stroke, heart attack, or death.

103.    Because of this, the cardiologist prescribed Plaintiff DODD a beta blocker and ordered Plaintiff to not return to work until July 6, 2021.

104.    Plaintiff DODD provided a note from his doctor indicating his return-to-work day of July 6 to Defendant JONES-BROWN and Ms. McCullum that same day.

105.    On or about June 29, 2021, Plaintiff DODD sought treatment from a mental health professional because of the increased stress he was experiencing from working in an environment where he faced consistent race discrimination without intervention.

106.   The mental health professional indicated that Plaintiff DODD was suffering from generalized anxiety and panic disorder due to work-related stress and prescribed Plaintiff medications to treat his symptoms.

107.   Although the annual budget for Defendant MY SISTERS' PLACE was initially meant to be approved by Defendant MY SISTERS' PLACE's Board of Directors by June 23, 2021, the Finance Committee agreed to extend the deadline to July 27, 2021, due to Plaintiff's medical absences, so he could participate in the process.

108.   On or about July 6, 2021, Plaintiff DODD returned to work.

109.   On that day, Defendant CHEEKS-LOMAX asked Plaintiff DODD to fill out a "Leave of Absence" form for TriNet for his absences the previous month, which she provided to him.

110.   Plaintiff DODD informed Defendant CHEEKS-LOMAX that he had spoken to Defendant JONES-BROWN and Ms. McCullen regarding completing paperwork and that Ms. McCullen stated that he did not have to fill out any forms in relation to his absence. Defendant CHEEKS-LOMAX did not respond.

111.   After his conversation with Defendant CHEEKS-LOMAX, Plaintiff DODD reached out to Ms. McCullen again and asked her if he was required to complete any forms related to his absence.

112.   That same day, Plaintiff DODD filled out an Extended Leave of Absence form provided by Ms. McCullen, which was a different form than the one that Defendant CHEEKS-LOMAX had given Plaintiff.

113.   Plaintiff DODD returned the completed form to Ms. McCullen and Defendant JONES-BROWN.

114.   Also, on or about July 6, 2021, Ms. Levy reached out to Plaintiff DODD to schedule a time to meet and discuss Plaintiff's concerns described in his June 1 Complaint. Plaintiff DODD and Ms. Levy scheduled a meeting for July 13, 2021.

115.   Plaintiff DODD noticed that Defendant CHEEKS-LOMAX's demeanor and behavior toward the Plaintiff changed when he returned to work.

116.   For example, Defendant CHEEKS-LOMAX emailed Plaintiff DODD multiple times, prior to their July 15, 2021 Finance Committee meeting, to make sure that Plaintiff would specifically address all Finance Committee concerns, including Defendant RICE's concerns, during the meeting. Defendant CHEEKS-

LOMAX had not micromanaged Plaintiff's presentations in this way prior to him taking time off for his medical conditions.

117.    Additionally, Defendant CHEEKS-LOMAX emailed Plaintiff DODD to request that he include certain financial statements in the July 15 meeting, even though she knew that, because financial statements of this kind were ordinarily not ready until the end of the month, they would not be complete by that time.

118.    Defendant CHEEKS-LOMAX also emailed Plaintiff DODD accusing him of preparing the budget prior to his medical leave without sharing it with the Finance Committee. Plaintiff responded that her accusation was false.

119.    On or about July 13, 2021 Plaintiff DODD had a video conference with Ms. Levy and her associate, Alexandra Lapes, who took notes.

120.    During the meeting, Plaintiff DODD described his complaint of race discrimination against Defendant RICE in detail and also discussed his concerns about Defendant CHEEKS-LOMAX denying his raise.

121.    During the July 13 meeting, Ms. Levy seemed surprised by Plaintiff DODD's assertion that he had discussed his complaints about Defendant RICE with Defendant CHEEKS-LOMAX prior to the June 1 Complaint.

122.    After the July 13 meeting, Plaintiff DODD emailed Ms. Levy documents and emails supporting his statement, including copies of Defendant RICE's problematic emails, emails related to Defendant CHEEKS-LOMAX denying Plaintiff's salary increase request, and a timeline summary of the complaints that Plaintiff hoped Ms. Levy would investigate.

123.    Plaintiff DODD met with Defendant CUTAIA to review and discuss expenses and other financial matters to prepare for the July 15 Finance Committee meeting, including transactions related to the Upwork Consultants.

124.    Then, on or about July 14, 2021, Plaintiff DODD met with Defendant CHEEKS-LOMAX to prepare for their July 15 Finance Committee meeting.

125. The next day, on or about July 15, 2021, Plaintiff DODD attended a meeting with Defendant MY SISTERS' PLACE's Finance Committee to discuss the upcoming July 27 presentation as well as future changes to Defendant MY SISTERS' PLACE's retirement plan.

126. After the July 15 meeting, Plaintiff DODD was expected to present the budget with Defendant CUTAIA on July 27, 2021.

127. On or about July 16, 2021, Plaintiff DODD received an email from Defendant FAUSTINO, Billing Manager. Ms. Faustino had copied Ms. Siniscalchi and Mr. Cutaia on the email.

128. Defendant FAUSTINO asked Plaintiff for invoices for work done by consultant Matinah Drew through the agency Upwork.

129. Ms. Drew had been hired to perform talent acquisition services for Defendant MY SISTERS' PLACE.

130. Plaintiff DODD had not been asked for invoices from a specific consultant's work before, as he only received weekly invoices from Upwork, not individual consultants.

131. The next day, on or about July 17, 2021, Plaintiff DODD sent Defendant FAUSTINO an email with the weekly invoices he had been provided indicating the hours that Ms. Drew had worked, which totaled approximately 150 hours since April 2021.

132. Defendant FAUSTINO answered by pressing for a more detailed account of the work that Ms. Drew was doing and had done since April 2021.

133. Plaintiff DODD responded by informing Defendant FAUSTINO that, since Ms. Drew complied with all of Upwork's requirements, he did not ask her to maintain additional detailed accounts of her work.

134. However, on or about July 19, 2021, Defendant FAUSTINO asked again by email for a detailed account of Ms. Drew's work. Plaintiff DODD again responded that Upwork is an automated system that monitors consultants' work by hours alone, so he did not have any detailed accounts to provide her.

135. Plaintiff DODD then offered to ask Ms. Drew to add more details to her timesheets going forward, if Defendant FAUSTINO wanted more information in the future.

136.    Then, in the afternoon of July 19, 2021, Plaintiff DODD met with Ms. Levy. Ms. Levy stated that she had investigated Plaintiff's claim and found "no basis for racial discrimination" by Defendant RICE.

137.    Ms. Levy opined that she found that Defendant RICE "questioned everyone" and that it was "just his personality."

138.    Ms. Levy did not give Plaintiff DODD any details about the nature of her investigation beyond sharing with Plaintiff that she spoke to "a variety of people" and considered "various documentation."

139.    Ms. Levy also stated that Plaintiff DODD was not "on contract" and that he was not eligible for a raise like other qualifying employees.

140.    By this, Ms. Levy meant that Plaintiff DODD was not eligible for the raise because he did not receive part or all of his salary through government contracts, so his raise would have to be funded through Defendant MY SISTERS' PLACE's general operating funds.

141.    Plaintiff DODD explained to Ms. Levy that her information was incorrect, as he and Defendant CHEEKS-LOMAX had determined that all employees hired prior to March 1, 2021, regardless of whether they were "on contract" or not, should receive raises retroactive to January 1, 2021.

142.    Plaintiff DODD then specifically mentioned five other employees who were not "on contract" but did receive raises, including Defendant CHEEKS-LOMAX; Defendant CUTAIA; Defendant GREENBERG, Chief Development Officer; Eleanor Cotter, Grants Manager; and Carly Levine, Special Events Manager.

143.    Plaintiff DODD asked Ms. Levy what would happen if Defendant RICE or Defendant CHEEKS-LOMAX retaliated as a result of the investigation. Plaintiff was especially concerned about Defendant RICE, who had frequently displayed race-based animus towards Plaintiff.

144.    Ms. Levy asked Plaintiff DODD to clarify what he meant by retaliation, and Plaintiff stated that he was concerned about Defendant CHEEKS-LOMAX, Defendant RICE, or other Defendant MY SISTERS' PLACE employees treating Plaintiff differently due to the investigation, Defendant CHEEKS-LOMAX terminating Plaintiff in retaliation for his complaint of race discrimination, and Mr. Rice's discriminatory treatment of Plaintiff worsening due to the investigation.

145. Ms. Levy responded that Plaintiff DODD was protected from retaliation under the law, so he should not be concerned, but that if Plaintiff was subject to any retaliatory acts then he should follow up directly with Defendant CHEEKS-LOMAX or Defendant GHEEWALLA.

146. Subsequently, on or about July 20, 2021, Plaintiff DODD entered a standing weekly management meeting, which was usually attended by Plaintiff, Defendant CHEEKS-LOMAX, Ms. Siniscalchi, and Defendant GREENBERG. However, only Defendant CHEEKS-LOMAX and Defendant GHEEWALLA were present.

147. At the meeting, Defendant CHEEKS-LOMAX abruptly informed Plaintiff DODD that he was terminated effective immediately because he had allegedly used his company card to pay for two consultants hired through Upwork for personal reasons, specifically updating his resume and LinkedIn profile.  Defendant CHEEKS-LOMAX and Defendant GHEEWALLA indicated that they were aware of this misconduct and had already acquired evidence of the wrongdoing prior to the meeting.

148. Plaintiff DODD was shocked at the unexpected news of his termination and explained to Defendant CHEEKS-LOMAX and Defendant GHEEWALLA that he had only hired these consultants for business-related purposes.

149. Plaintiff DODD further indicated that he felt the decision to terminate him was already made prior to the call, even though they had never asked Plaintiff about the nature of the consultant charges or the previously acquired evidence.

150. In total, Plaintiff DODD spent approximately $1,700 on the two Upwork consultants for legitimate business purposes.

151. Plaintiff DODD explained to Defendant CHEEKS-LOMAX and Defendant GHEEWALLA that he used the consultants to update his resume and LinkedIn profiles because they were required for his application to be a speaker at the August 2021 Office of Victims Services Conference and they had not been updated since Plaintiff had started working for Defendant MY SISTERS' PLACE.

152.   By way of background, Plaintiff DODD had learned about the conference through Defendant FAUSTINO and finding opportunities to engage with Defendant MY SISTERS' PLACE's funders, like this conference which was being held by one of Defendant MY SISTERS' PLACE's largest funders, was an important part of Plaintiff's job.

153.   Defendant CHEEKS-LOMAX had specifically instructed Plaintiff DODD that he needed to share his experience in changing Defendant MY SISTERS' PLACE's healthcare plan with other organizations and the community. As such, Plaintiff believed that the conference would be a good opportunity to do so, as he had specifically applied to give a presentation on that topic under the category "Doing More with Less."

154.   In fact, Plaintiff DODD had emailed Defendant CHEEKS-LOMAX and Defendant Faustino that he had applied to this particular conference, and they both responded positively.

155.   The amount of money spent on the consultants was similarly benign, as Plaintiff DODD was authorized by Defendant MY SISTERS' PLACE to sign any checks up to $10,000, to withdraw up to $250,000 from Westchester Bank, and to withdraw up to $200,000 from TD Bank without prior Board approval.

156.   Moreover, Plaintiff DODD was responsible for authorizing between approximately $3,000-$4,000 in consulting fees each week through the normal course of business and without need for Board approval.

157.   After hearing Plaintiff DODD's explanation, Defendant CHEEKS-LOMAX firmly stated, "You are still terminated" and then ended the call.

158.   Although Defendant MY SISTERS' PLACE generally used a progressive discipline model to manage employee performance, Plaintiff DODD was terminated despite never having received any prior warnings or discipline.

159.   Within thirty minutes of Plaintiff DODD's call with Defendant CHEEKS-LOMAX and Defendant GHEEWALLA, his access to all Defendant MY SISTERS' PLACE systems was removed.

160.   Immediately after the meeting, Plaintiff DODD sent a follow-up email to Ms. Levy explaining that he had just been subject to a retaliatory termination.

161.   In response, Ms. Levy indicated that she had only been retained to investigate Plaintiff DODD's June 1 email to Defendant CHEEKS-LOMAX and, since that investigation was complete, he should reach out to Defendant CHEEKS-LOMAX or Defendant GHEEWALLA.

162.   It is clear, based on the temporal proximity between Plaintiff DODD's complaints of discrimination and his medical leave and the termination of his employment, as well as the pretextual reason Defendant MY SISTERS' PLACE provided for the unwarranted termination of Plaintiff's employment, that Defendant CHEEKS-LOMAX and Defendant GHEEWALLA terminated Plaintiff's employment in retaliation for his complaint of discrimination and on the basis of his disability.

163.   Plaintiff DODD was unlawfully discriminated and retaliated against, humiliated, and degraded.

164.   As a result of the acts and conduct complained of herein, Plaintiff DODD suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails.

165.   As a result of the acts and conduct complained of herein, Plaintiff DODD also experienced severe emotional and physical distress.

166.   Defendants' actions and conduct were intentional and intended to harm Plaintiff DODD.

167.   As a result of the above, Plaintiff DODD has been damaged in an amount which exceeds the jurisdiction limits of the Court.

168.   Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff DODD demands punitive damages against all Defendants, jointly and severally.

**THE ROLE AND INVOLVEMENT OF EACH DEFENDANT IN THIS LEGAL MATTER**

169.   Defendant CHEEKS-LOMAX was the direct manager of Plaintiff DODD and executed the termination action of Plaintiff DODD on July 20, 2021.

170.   Defendant CHEEKS-LOMAX coordinated the retaliation against Plaintiff DODD, including retaining Susan Markel and AxilPartners as well as participating in investigation.

171.   Defendant RICE subjected Plaintiff to multiple instances of discrimination as well as other race-related treatment during the course of his employment.

172.   Defendant RICE authorized the use of Susan Markel and AxilPartners to perform investigation of Plaintiff DODD to support his retaliatory termination.

173.   Defendant RICE failed to provide adequate oversight of My Sisters' Place, including failing to research and address the resignation of Defendant Touhy from the Board of Directors as a result of race-related matters.

174.   Defendant SIEDEN failed to provide adequate oversight of My Sisters' Place.  Specifically, Defendant SIEDEN failed to address or respond to the multiple instances of racial discrimination raised by Plaintiff DODD between January 2021 and July 2021.

175.   Defendant SIEDEN authorized the use of Susan Markel and AxilPartners to perform investigation of Plaintiff DODD to support his retaliatory termination.

176.   Defendant SIEDEN failed to provide adequate oversight of My Sisters' Place, including failing to research and address the resignation of Defendant Touhy from the Board of Directors as a result of race-related matters.

177.   Defendant GHEEWALLA executed the termination action of Plaintiff DODD on July 20, 2021.

178.   Defendant GHEEWALLA failed to provide adequate oversight of My Sisters' Place.  Specifically, Defendant GHEEWALLA failed to address or respond to the multiple instances of racial discrimination raised by Plaintiff DODD between January 2021 and July 2021.

179.   Defendant RAHO failed to provide adequate oversight of My Sisters' Place.  Specifically, Defendant RAHO failed to address or respond to the multiple instances of racial discrimination raised by Plaintiff DODD between January 2021 and July 2021.

180.   Defendant RAHO authorized the use of Susan Markel and AxilPartners to perform investigation of Plaintiff DODD to support his retaliatory termination.

181.   Defendant PURVIS failed to provide adequate oversight of My Sisters' Place.  Specifically, Defendant RAHO failed to address or respond to the multiple instances of racial discrimination raised by Plaintiff DODD between January 2021 and July 2021.

182.   Defendant PURVIS authorized the use of Susan Markel and AxilPartners to perform investigation of Plaintiff DODD to support his retaliatory termination.

183.   Defendant COHEN attended zero Board meetings for My Sister's Place during Plaintiff DODD's employment and requested and reviewed no financial information related to the organization.  As a result, Defendant COHEN breached his financial duty to the organization and, as such, failed to address problems of race and race-related matters within the organization.

184.   Defendant TOUHY resigned from the Board of Directors of My Sister's Place as the result of race and race-related matters, including the Anti-Racism Training.  Although Defendant TOUHY resigned from the Board in response to her race-related concerns, she failed to execute her full responsibilities as a Board Member in response to this situation.  For example, Defendant TOUHY failed to file a formal complaint with the Co-Chairs of the Board, Defendant RICE and Defendant SIEDEN, regarding Defendant CHEEKS-LOMAX or My Sisters' Place as an organization such that her concerns could be investigated by the Board of Directors and the root causes addressed.  As such, Defendant TOUHY failed to execute her fiduciary responsibility to the organization to address and resolve the race and race-related problems she identified within the organization.

185.   Defendant GREENBERG participated in the retaliatory termination of Plaintiff DODD.  Specifically, Defendant GREENBERG participated in the investigation performed by Susan Markel and AxilPartner to support the retaliatory termination of Plaintiff Dodd.

186.   Defendant CUTAIA participated in the retaliatory termination of Plaintiff DODD.  Specifically, Defendant CUTAIA participated in the investigation performed by Susan Markel and AxilPartner to support the retaliatory termination of Plaintiff Dodd.

187.   Defendant JONES-BROWN participated in the retaliatory termination of Plaintiff DODD.  Specifically, Defendant JONES-BROWN participated in the investigation performed by Susan Markel and AxilPartner to support the retaliatory termination of Plaintiff Dodd.

188. Defendant FAUSTINO participated in the retaliatory termination of Plaintiff DODD.  Specifically, Defendant FAUSTINO participated in the investigation performed by Susan Markel and AxilPartner to support the retaliatory termination of Plaintiff Dodd.

189. Defendant DEBONIS participated in the retaliatory termination of Plaintiff DODD.  Specifically, Defendant DEBONIS participated in the investigation performed by Susan Markel and AxilPartner to support the retaliatory termination of Plaintiff Dodd.

**FIRST CAUSE OF ACTION**
**RETALIATION UNDER TITLE VII**
**(Against Defendant MY SISTERS' PLACE)**

190. Plaintiff DODD repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein at length.

191. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

192. Defendant MY SISTERS' PLACE violated the sections cited herein as set forth through, among other things, unlawfully terminating Plaintiff as a result of his good faith complaints of discrimination.

193. Plaintiff DODD was retaliated against because of the good faith complaints he made based upon the discrimination he experienced.

194. Accordingly, as a result of the unlawful conduct of Defendant MY SISTERS' PLACE, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to him under this law.

**SECOND CAUSE OF ACTION**
**RETALIATION UNDER SECTION 1981**
**(Against all Defendants)**

195. Plaintiff DODD repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein at length.

196.  42 U.S.C. Section 1981 states in relevant part as follows:

    a.    Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

    b.    "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

197.  Plaintiff DODD was discriminated against because of his race as provided under 42 U.S.C. Section 1981 and has suffered damages as set forth herein.

198.  Plaintiff DODD was retaliated against because of the good faith complaints he made based upon the discrimination he experienced.

199.  Accordingly, as a result of Defendants' unlawful conduct, Plaintiff DODD has been damaged as set forth herein and is entitled to the maximum compensation available to him under this law.


### THIRD CAUSE OF ACTION
### DISCRIMINATION UNDER THE ADA
### (Against Defendant MY SISTERS' PLACE)

200.  Plaintiff DODD repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein at length.

201.  Defendant MY SISTERS' PLACE violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336), as amended, as these titles appear in volume 42 of the United States Code, beginning at Section 12101.

202.  Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112 "Discrimination" states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

203.   Defendant MY SISTERS' PLACE violated the sections cited herein as set forth by discriminating against him and subjecting him to a hostile work environment because of his disability.

204.   Accordingly, as a result of the unlawful conduct of Defendant MY SISTERS' PLACE, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to him under this statute.

**FOURTH CAUSE OF ACTION**
**DISCRIMINATION UNDER THE NYSHRL**
**(Against all Defendants)**

205.   Plaintiff DODD repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein at length.

206.   Executive Law § 296 provides that:

It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, **race**, creed, color, national origin, sexual orientation, military status, sex, **disability**, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

207.   Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff DODD because of his race and disability.

208.   The discrimination which Plaintiff DODD experienced exceeded petty slights and inconveniences.

209.   Accordingly, as a result of Defendants' unlawful conduct, Plaintiff DODD has been damaged as set forth herein and is entitled to the maximum compensation available to him under this law.

**FIFTH CAUSE OF ACTION**
**DISCRIMINATION UNDER THE NEW YORK STATE EXECUTIVE LAW**
**(Against Defendant RICE and Defendant CHEEKS-LOMAX)**

210.   Plaintiff DODD repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein at length.

211.  New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice "For any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

212.  Defendant RICE and Defendant CHEEKS-LOMAX violated this statute as set forth.

213.  The discrimination which Plaintiff DODD experienced as a result of the actions of Defendant RICE and Defendant CHEEKS-LOMAX exceeded petty slights and inconveniences.

214.  Accordingly, as a result of Defendant RICE and Defendant CHEEKS-LOMAX's unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to him under this statute.

## SIXTH CAUSE OF ACTION
## RETALIATION UNDER THE NYSHRL
### (Against all Defendants)

215.  Plaintiff DODD repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein at length.

216.  New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

217.  Defendants violated the section cited herein as set forth.

218.  The discrimination which Plaintiff DODD experienced as a result of the actions of Defendants exceeded petty slights and inconveniences.

219.  Plaintiff DODD was retaliated against because of the good faith complaints he made based upon the discrimination he experienced.

220.  Accordingly, as a result of Defendants' unlawful conduct, Plaintiff DODD has been damaged as set forth herein and is entitled to the maximum compensation available to him under this law.

## JURY DEMAND

221.  Plaintiff DODD requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A.    Declaring that Defendants engaged in, and enjoining Defendants from continuing to engage in, unlawful employment practices prohibited by the Title VII, Section 1981; the ADAAA and the New York State Human Rights Law, in that Defendants subjected Plaintiff to discrimination on the basis of his race and disability, and retaliation for complaining of race discrimination;

B.    Awarding damages to Plaintiff DODD for all lost wages and benefits resulting from Defendants' unlawful discrimination and retaliation and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C.    Awarding Plaintiff DODD compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D.    Awarding Plaintiff DODD punitive damages;

E.    Awarding Plaintiff DODD attorneys' fees, costs, and expenses incurred in the prosecution of the action; and;

F.    Awarding Plaintiff DODD such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: April 27, 2022

                              s/Marcus Andre Dodd;
                  By:    _____
                         Marcus Andre Dodd
                         4646 North Beacon Street, #102
                         Chicago, IL 60640
                         312-560-9880
                         marcusandredodd@gmail.com