# EXHIBIT "B-2"

 Neutral

As of: May 17, 2022 4:09 PM Z

# Mikolaenko v. New York Univ.

United States District Court for the Southern District of New York

September 7, 2017, Decided; September 7, 2017, Filed

16 Civ. 413 (DAB)

**Reporter**

2017 U.S. Dist. LEXIS 146776 *

IRINA MIKOLAENKO, Plaintiff, v. NEW YORK UNIVERSITY, et al., Defendants.

**Subsequent History:** Motion granted by, Motion denied by, Costs and fees proceeding at Mikolaenko v. New York Univ., 2020 U.S. Dist. LEXIS 40408 (S.D.N.Y., Mar. 9, 2020)

Dismissed by, Summary judgment denied by, As moot Mikolaenko v. New York Univ., 2020 U.S. Dist. LEXIS 179424 (S.D.N.Y., Sept. 29, 2020)

**Counsel:** [*1] For Dr. Irina Mikolaenko, Plaintiff: Russell S. Moriarty, Levine & Blit, Pllc, New York, NY.

For New York University, NYU School of Medicine, NYU Langone Medical Center, Dr. David Zagzag, individually, Defendants: Ricki E. Roer, LEAD ATTORNEY, Wilson Elser Moskowitz Edelman & Dicker LLP (NY), New York, NY; Alexandra Manfredi, Frumkin & Hunter LLP ( White Plain), White Plains, NY; Valerie Lorraine Hooker, Venturini & Associates, New York, NY; William Fuger Cusack, III, Wilson & Chan LLP, New York, NY.

**Judges:** Deborah A. Batts, United States District Judge.

**Opinion by:** Deborah A. Batts

# Opinion

## MEMORANDUM & ORDER

DEBORAH A. BATTS, United States District Judge.

Plaintiff Irina Mikolaenko filed suit against Defendants New York University ("NYU"), NYU School of Medicine, NYU Langone Medical Center,[1] and David Zagzag for discrimination on the basis of sex and national origin, hostile work environment based on sexual harassment and national origin, quid pro quo sexual harassment, and retaliation, all under Title VII, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Defendants move to dismiss in part. For the following reasons, Defendants' Motion to Dismiss is GRANTED in part [*2] and DENIED in part.

## I. BACKGROUND

Plaintiff is a female medical doctor, born in Eastern Ukraine and raised in the former Soviet Union. (Compl. ¶ 3.) She identifies as ethnic Russian and speaks Russian, Ukrainian, and English with a distinct Russian accent. (Id.) Plaintiff worked as an Assistant Clinical Professor in NYU's Pathology Department from 2008 until her termination on February 6, 2015. (Id. ¶¶ 19-20.) NYU is an educational and medical organization. (Id. ¶ 4.) NYU School of Medicine is a division of NYU and

---

[1] As discussed infra pp. 8-9, the relationship between and legal capacity of NYU, NYU School of Medicine, and NYU Langone Medical Center is disputed by the parties. Although the Court has defined "NYU" to mean "New York University," because Plaintiff also uses many of the terms interchangeably, the Court generally refers to Plaintiff's employment with "NYU."

2017 U.S. Dist. LEXIS 146776, *2

an educational institution focusing on medicine. (Id. ¶ 5.) NYU Langone Medical Center is an affiliate of NYU and NYU School of Medicine and is a healthcare, educational, and medical research institution. (Id. ¶ 6.) Dr. David Zagzag is the Chief of NYU's Division of Neuropathology and became Plaintiff's supervisor around 2012. (Id. ¶¶ 9, 22-24.) Defendant Zagzag allegedly had supervisory authority over Plaintiff with the "authority to undertake or recommend tangible employment decisions and/or control the terms and conditions of [her] employment with [NYU]." (Id. ¶ 9.)

A. Allegations Related to Sexual Harassment

Shortly after she began working for NYU, Plaintiff was allegedly [*3] warned that Defendant Zagzag was a "womanizer," that his lab was "sexually charged," and that he wanted female employees to wear sexually provocative clothes. (Id. ¶ 24.) She was also told that he terminated a female employee several years earlier because that employee refused to engage in a sexual relationship with him. (Id.)

Around the time Plaintiff's former supervisor left NYU in 2012, Defendant Zagzag purportedly began to harass Plaintiff. (Id. ¶ 25.) He "made it be known" to Plaintiff that, if she did not have sex with him, she would receive poor reviews and be terminated. (Id. ¶ 26.) Thereafter he began to make inappropriate sexual comments to her and to proposition her for sex. (Id. ¶ 27.) For example, Defendant Zagzag would allegedly routinely tell Plaintiff that she looked "good" and "sexy" and that she has a "pretty face." (Id. ¶ 28.) He also complimented her hair, breasts, skin, fragrance, hands, and legs, especially if she wore a skirt to work. (Id.) Defendant Zagzag also regularly propositioned Plaintiff for sex and told her that her job security depended on sex. (Id.) Defendant Zagzag's alleged campaign of harassment was not solely verbal: he would also regularly press [*4] his body against Plaintiff's when discussing work issues. (Id.)

At "some point," Plaintiff, allegedly fearing that she would lose her job, relented to Defendant Zagzag's demands for sex and began an unwanted sexual relationship with him. (Id. ¶ 29.) The relationship, which lasted from early 2013 until mid-2014, allegedly included oral and anal sex and in Defendant Zagzag masturbating on Plaintiff. (Id. ¶ 30-31.) On one occasion, on May 9, 2014, Defendant Zagzag ordered Plaintiff into the lab, knowing that the lab technicians would no longer be there. (Id. ¶ 32.) When she arrived, he demanded oral sex. (Id. ¶ 33.) On June 30, 2014, Defendant Zagzag again allegedly pressured Plaintiff into having sex with him and proceeded to masturbate on her and to subject her to painful, harsh, and aggressive sex. (Id. ¶ 35.) After that encounter, Plaintiff allegedly felt degraded, had a breakdown, and became extremely depressed. (Id. ¶ 36.)

Although Plaintiff attempted to avoid Defendant Zagzag after the June 30, 2014 encounter, he allegedly continued to harass her for sex. (Id. ¶¶ 37-39.) Several times beginning in August 2014, Defendant Zagzag entered Plaintiff's office, closed the door, touched [*5] her, tried to kiss her, exposed his genitals to her, and propositioned her for sex. (Id. ¶ 39.) When he entered Plaintiff's office, he would tell her about his erections and that, unless she has sex with him, she would get in trouble with the Department Chair, receive a negative performance review, and lose her job. (Id. ¶ 41.) Plaintiff feared that she would suffer professional consequences if she reported Defendant Zagzag's campaign of harassment. (Id. ¶ 42.) In late 2014 or early 2015, after Plaintiff's 2014 evaluation period had begun, Defendant Zagzag allegedly demanded oral sex in Plaintiff's office and said that if she did not perform oral sex on him, she would receive a poor evaluation. (Id. ¶¶ 43-45.) He also allegedly demanded oral sex in Plaintiff's office at some point in January 2015. (Id. ¶ 46.)

In late January 2015, Plaintiff demanded that Defendant Zagzag cease his sexual advances and refused to have any sexual contact with him. (Id. ¶¶ 47-48.) Her employment with NYU was terminated roughly one week later on February 6, 2015. (Id. ¶¶

20, 48.)

## B. Allegations Related to National Origin and Ethnicity Discrimination

Christina Baranetsky has been employed by NYU's Pathology [*6] Department in Dr. Cangiarella's office[2] since 2008. (Id. ¶ 50.) She is allegedly a Ukrainian nationalist supporter and loathed Plaintiff's Russian ethnicity and accent because of geopolitical conflicts between Ukraine and Russia. (Id.) On November 27, 2013, Baranetsky said that she hated "Russian Moskali"[3] and that she supported Ukrainian extremism. (Id. ¶ 51.) Baranetsky also purportedly fired other staff for "just disliking them for their Russian language." (Id. ¶ 52.)

In May 2012, Baranetsky allegedly requested that Plaintiff's office be moved for no legitimate reason. (Id. ¶ 54.) Plaintiff was then assigned to a noisy, small, closet-like windowless room with poor ventilation while her former office remained unoccupied. (Id. ¶ 54.) Allegedly because of Baranetsky's influence, Cangiarella's secretarial staff were unapproachable any time Plaintiff asked for assistance. (Id. ¶ 55.) Although Plaintiff allegedly complained to Cangiarella about Baranetsky, he did not resolve the conflict. (Id. ¶ 56.)

## C. Allegations Related to Sex Discrimination

Dr. Alfantis, the Pathology Department Chair,[4] allegedly favored his male colleagues, Defendant

Zagzag [*7] and Dr. Snuderl,[5] and gave them more career-advancing opportunities than he did to Plaintiff. (Id. ¶ 57.) In January 2015, Alfantis referred to Plaintiff as "stupid" in an email, but he would allegedly not treat other colleagues, particularly male colleagues, in the same manner. (Id. ¶ 58.) He also allegedly routinely sent Plaintiff emails in the middle of the night, even though he would not email male colleagues in the middle of the night. (Id. ¶ 59.)

## D. Complaints, Termination, and Procedural History

On January 26, 2015, Plaintiff submitted a protected complaint to NYU Langone Medical Center alleging discrimination based on national origin, ethnicity, and gender only. (Id. ¶¶ 60-61.) Plaintiff was then terminated on February 6, 2015. (Id. ¶ 20.)

Plaintiff filed a charge with the Equal Opportunity Employment Commission ("EEOC") against Defendants on April 6, 2015[6] and received a Right to Sue letter on October 27, 2015. (Id. ¶ 14.) She filed the instant suit on January 19, 2016.

## II. Discussion

## A. Legal Standard for Rule 12(b)(6) Motion to Dismiss

For a complaint to survive a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible [*8] on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The Supreme Court explained,

A claim has facial plausibility when the

---

[2] Plaintiff does not explain who Dr. Cangiarella is or how his position related to hers.

[3] "Moskali" is a slur used by Ukrainians to insult Russians. See Jacques Bacic, Letter to the Editor, When Ukrainians Call Russians "Moskali", N.Y. Times, Nov. 26, 1992, http://www.nytimes.com/1992/11/26/opinion/l-when-ukrainians-call-russians-moskali-068092.html?mcubz=0 ; Moskal, Urban Dictionary, http://www.urbandictionary.com/define.php?term=Moskal .

[4] Plaintiff again does not explain who Dr. Alfantis is in her Complaint, but her EEOC charge, which is incorporated by reference in the Complaint, specifies his role. (Defs.' Mot. Dismiss, Ex. B ¶ 7.)

---

[5] Plaintiff again does not explain who Dr. Snuderl is or what his position was in relation to hers.

[6] Plaintiff's EEOC charge, which is incorporated by reference in the Complaint and is attached as Exhibit B to Defendants' Motion to Dismiss, largely mirrors the Complaint but contains fewer allegations related to Defendant Zagzag's alleged harassment of her and their unwanted sexual relationship. (See generally, Defs.' Mot. Dismiss, Ex. B.)

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 556-57). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Supreme Court further stated,

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions [*9] can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

In considering a Rule 12(b)(6) motion, the Court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts

Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). However, this principle is "inapplicable to legal conclusions," Iqbal, 556 U.S. at 678, which, like the complaint's "labels and conclusions," Twombly, 550 U.S. at 555, are disregarded. Nor should a court "accept [as] true a legal conclusion couched as a factual allegation." Id. In resolving a 12(b)(6) motion, a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).[7]

**B. NYU Medical School and NYU Langone Medical Center**

Defendants seek to dismiss all Counts as against

---

[7] Defendants have attached many emails sent by Plaintiff as Exhibits C and D to their Motion to Dismiss. "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). In this case, the emails Defendants seek to include are not incorporated by reference in the Complaint because the Complaint does not make "a clear, definite and substantial reference to the documents." Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003). Plaintiff references one email in which Dr. Alfantis referred to her as "stupid" in the Complaint and other emails he sent her generally. (Compl. ¶¶ 58-59). She does not refer to or rely upon the full chain of emails in the Complaint. Defendants do not cite to any case law reflecting something comparable to the "rule of completeness" regarding the introduction of correspondence that applies at the motion to dismiss stage, and the Court is not aware of any such doctrine. Rather, the emails are simply evidence to be considered by the fact finder in this case. The Court views Defendants' attempt to introduce the emails as a wholly improper attempt to undermine Plaintiff's credibility when, as Defendants' attorneys should know, such a determination is not made at the motion to dismiss stage. Further, Defendants' cited cases are factually inapposite. For example, in Kelly v. North Shore—Long Island Jewish Health System, 166 F. Supp. 3d 274 (E.D.N.Y. 2016), the Court allowed introduction of a letter that was specifically referenced in the complaint but explicitly excluded other correspondence that was neither integral to the complaint nor incorporated by reference in it. Id. at 284. Accordingly, the Court does not consider Exhibits C and D to Defendants' Motion to Dismiss. However, Exhibit B to the Motion to Dismiss, Plaintiff's EEOC charge, is incorporated by reference in the Complaint (Compl. ¶ 14) and relates to whether Plaintiff exhausted her administrative remedies with respect to various Counts in the Complaint.

NYU Medical Center and NYU Langone Medical Center on the grounds that they are not legal entities. Plaintiff seeks discovery to determine whether these two entities are amenable to suit.

Federal Rule of Civil Procedure 9(a)(1) provides [*10] that, "[e]xcept when required to show that the court has jurisdiction," a Complaint need not allege: "(A) a party's capacity to sue or be sued; (B) a party's authority to sue or be sued in a representative capacity; or (C) the legal existence of an organized association of persons that is made a party." To raise any of those issues, a defendant "must do so by a specific denial, which must state any supporting facts that are peculiarly within [its] knowledge." Fed. R. Civ. P. 9(a)(2).

Here, Defendants have only set forward argument, not facts, that NYU Medical Center and NYU Langone Medical Center are not legal entities. These supporting facts, which could be submitted in the form of affidavits or other documentary evidence, are peculiarly within Defendants' control.

It may be proper, in certain circumstances, to dismiss against a defendant on the grounds that the defendant is not a legal entity. For example, in Ellul v. Congregation of Christian Bros., No. 09 CIV. 10590 (PAC), 2011 U.S. Dist. LEXIS 29887, 2011 WL 1085325 (S.D.N.Y. Mar. 23, 2011), aff'd, 774 F.3d 791 (2d Cir. 2014), the Court dismissed a complaint against a defendant who was not a legal entity only after the defendant introduced a declaration reflecting as much. 2011 U.S. Dist. LEXIS 29887, [WL] at *3. See also Thompson v. Jam. Hosp. Med. Ctr., No. 13 CIV. 1896, 2016 U.S. Dist. LEXIS 116985, 2016 WL 4556905, at *5-6 (S.D.N.Y. Aug. 30, 2016). In Sculerati v. New York University, No. 126439/02, 2003 N.Y. Misc. LEXIS 641, 2003 WL 21262371 (N.Y. Sup. Ct. May 16, 2003), the Court dismissed as against "NYU Medical Center" and "NYU School of Medicine" [*11] on the grounds that the parties did not dispute whether or not they were not legal entities. 2003 N.Y. Misc. LEXIS 641, [WL] at *1 n.1.

Accordingly, at this time Plaintiff may proceed against NYU Medical Center and NYU Langone Medical Center on the Counts that remain.

C. Individual Liability of Defendant Zagzag

Defendants also seek to dismiss all Counts as against Defendant Zagzag on the grounds that an individual cannot be held liable under Title VII and that Defendant Zagzag did not "aid and abet" discriminatory conduct within the meaning of NYSHRL or NYCHRL.

Defendants are correct that individuals are not subject to liability under Title VII, and Plaintiff does not oppose Defendants' Motion to Dismiss on this basis. See Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004). Accordingly, Plaintiff's federal claims (Counts I, IV, VII, X, XIII, and XVI) are DISMISSED as against Defendant Zagzag.[8]

1. Individual Liability Under NYSHRL

Under NYSHRL, individuals can be held liable if they act as employers, N.Y. Exec. Law § 296(1), or if they "aid, abet, incite, compel or coerce" discriminatory acts by employers. N.Y. Exec. Law § 296(6).

An individual is an "employer" within the meaning of the NYSHRL if that individual has an "ownership interest or any power to do more than carry out personnel decisions made by others." Patrowich v. Chem. Bank, 63 N.Y.2d 541, 542, 473 N.E.2d 11, 483 N.Y.S.2d 659 (N.Y. 1984). Some [*12] courts in the Second Circuit have applied the economic reality test,[9] developed in the

---

[8] Defendants do not argue that NYU cannot be held liable for Defendant Zagzag's actions. Nonetheless, the Court notes that, under Title VII, an employer can be held liable for the discriminatory actions of an employee that serves in a supervisory role. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998).

[9] In determining whether an individual counts as an employer, the economic reality test considers "whether the alleged employer possessed the power to control the workers in question." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999). Under this

context of the Fair Labor Standards Act, in determining whether an individual qualifies as an employer under the NYSHRL. See, e.g., Scalera v. Electrograph Sys., Inc., 848 F. Supp. 2d 352, 371 (E.D.N.Y. 2012). Here, Plaintiff has pled sufficient facts alleging that Defendant Zagzag was her employer. She alleges that he was her "immediate supervisor," that he had "authority to undertake or recommend tangible employment decisions," (Compl. ¶ 9), and that he had the power to give her performance reviews. (Id. ¶¶ 26, 41, 43.) Defendant Zagzag can thus be held individually liable under NYSHRL.

2. Individual Liability Under NYCHRL

The NYCHRL makes it is unlawful for "an employer or an employee or agent thereof" to engage in discriminatory employment practices. N.Y.C. Admin. Code § 8-107(1)(a). This provides a broader basis for individual liability than NYSHRL and can be used to hold an individual liable regardless of whether that individual qualifies as an employer or aids or abets discriminatory conduct. See Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012). Defendant Zagzag can thus be held individually liable under NYCHRL as either an employer or employee.

D. Whether Any of Plaintiff's Allegations Are Time Barred

In this case, Plaintiff [*13] filed her EEOC charge on April 6, 2015. Under Title VII, a plaintiff can generally only bring charges based on an employment practice that occurred within 300 days of the filing of an EEOC charge. 42 U.S.C. § 2000e-5(e)(1). 300 days before April 6, 2015 is June 9, 2014. Both the NYSHRL and NYCHRL contain a three year statute of limitations. See N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d). It is well established that the statutes of

limitations for NYSHRL and NYCHRL are automatically tolled while a plaintiff has a claim pending with the EEOC. See DeNigris v. N.Y.C. Health & Hosps. Corp., 861 F. Supp. 2d 185, 192 (S.D.N.Y. 2012). Three years prior to the filing of Plaintiff's EEOC charge is April 6, 2012.

Under Title VII, the Court can consider any actions occurring after June 9, 2014. There are several allegations in the Complaint that occurred before then. Plaintiff alleges that Defendant Zagzag began to harass her in 2012 and that her coerced sexual relationship with Defendant Zagzag began in early 2013 and ended in mid-2014 and specifically that he demanded oral sex from her on May 9, 2014. (Compl. ¶¶ 25, 31-33.) Plaintiff also alleges that Baranetsky used a Russian slur on November 27, 2013 and had Plaintiff's office moved in May 2012. (Id. ¶¶ 51, 54.) All of these acts occurred within the NYSHRL and NYCHRL [*14] statutes of limitations.[10]

Plaintiff argues that the Title VII statute of limitations should be extended under the continuous discrimination theory because of ongoing discriminatory practices.

1. Continuous Discrimination Doctrine

Title VII "precludes recovery for discrete acts of discrimination . . . that occur outside the statutory time period." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). To avail herself of the continuous discrimination doctrine and thus enlarge the statute of limitations period, an employment discrimination plaintiff "must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009) (quoting Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999)). Alternatively, the plaintiff can demonstrate

---

test, "the relevant factors include whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. (citations and quotations omitted).

---

[10] It is unclear when in 2012 Defendant Zagzag began to harass Plaintiff. Any allegations occurring prior to April 6, 2012 may be time barred, but that issue is not before the Court at this time.

that "specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." Sullivan v. N.Y.C. Dep't of Investigation, 163 F. Supp. 3d 89, 98 (S.D.N.Y. 2016) (quoting Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994)).

Hostile work environment claims, by their nature, involve repeated, separate acts that "collectively constitute one 'unlawful employment practice.'" Morgan, 536 U.S. at 115, 117 (quoting 42 U.S.C. § 2000e—5(e)(1)). The Supreme Court has held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, [*15] is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." Id. at 105. By contrast, discrete acts, even if related to acts alleged within the statutory time frame, are time barred if they take place outside of the limitations period. Id. at 113.

2. Application

With respect to Baranetsky's alleged discriminatory actions, Plaintiff cannot avail herself of the continuous discrimination doctrine for either her national origin/ethnicity disparate treatment claim (Count IV) or her national origin/ethnicity hostile work environment claim (Count XIII). Regardless of whether there was some sort of continuing violation, Plaintiff does not allege any actions that took place within the limitations period. See id. at 105. The Court thus cannot consider the allegations related to Baranetsky's actions, so no allegations remain with respect to national origin/ethnicity discrimination under Title VII. As such, Counts IV and XIII are DISMISSED.

The remaining allegations at issue are that, generally, Defendant Zagzag began to harass Plaintiff in 2012, Plaintiff's coerced sexual relationship with Defendant Zagzag began in early 2013, [*16] and, specifically, that Defendant Zagzag demanded oral sex from her on May 9,

2014. These allegations relate to Plaintiff's sexual harassment/hostile work environment claim (Count VII) and her quid pro quo claim (Count X). Hostile work environment claims inherently involve repeated acts that, together, constitute one employment practice. Morgan, 536 U.S. at 115, 117. Because other allegations related to the hostile work environment claim occurred within the statutory time limit, these particular allegations can also be considered for purposes of the Title VII sexual harassment/hostile work environment claim.

Plaintiff's quid pro quo claim is inherently related to her hostile work environment claim. And, for the purposes of the statute of limitations, the quid pro quo claims involved behavior that was permitted by NYU to "continue unremedied for so long as to amount to a discriminatory policy or practice." See Sullivan, 163 F. Supp. 3d at 98. Plaintiff was allegedly faced with the choice between having sex with Defendant Zagzag or receiving negative performance reviews and being terminated from her position at NYU. (See Compl. ¶ 26.) Thus, each ongoing incident where Defendant Zagzag allegedly pressured her to have sex with him was part of a [*17] larger quid pro quo harassment practice that continued for nearly a year and a half.[11] This allegation is not an isolated occurrence. Plaintiff has included references to four other specific allegations where the same quid pro quo expectations were at issue. Accordingly, the Court holds that these allegations are not time barred for the purposes of Plaintiff's Title VII quid pro quo claim (Count X).[12]

---

[11] The Second Circuit has held that "[t]he relevant inquiry in a quid pro quo case is whether the supervisor has linked tangible job benefits to the acceptance or rejection of sexual advances. It is enough to show that the supervisor used the employee's acceptance or rejection of his advances as the basis for a decision affecting the compensation, terms, conditions or privileges of the employee's job." Karibian v. Columbia Univ., 14 F.3d 773, 778 (2d Cir. 1994)

[12] Defendants also argue that Plaintiff cannot avail herself of the continuous violation doctrine because she did not name it in her EEOC charge. The administrative exhaustion requirements applicable to substantive claims in an employment discrimination complaint, see infra p. 15-16, are also applicable to the continuous

E. Whether Plaintiff Exhausted Her Administrative Remedies with Respect to Her <u>Quid Pro Quo</u> Claims

Defendant also moves to dismiss on the grounds that Plaintiff failed to exhaust her administrative remedies because she first included allegations of a <u>quid pro quo</u> sexual relationship in her Complaint and did not include related allegations in her EEOC charge.[13]

Prior to bringing suit in federal court under Title VII, a plaintiff must first exhaust her administrative remedies by presenting the claims that form the basis of her suit to the EEOC. See Littlejohn v. City of New York, 795 F.3d 297, 322 (2d Cir. 2015). Even if a claim was not first presented to the EEOC, a plaintiff may still pursue that claim if it is reasonably related to the claims that were raised before the EEOC. [*18] <u>Id.</u> "A claim is reasonably related to the filed claim 'if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.'" <u>Littlejohn v. City of New York</u>, 795 F.3d 297, 322 (2d Cir. 2015) (quoting <u>Deravin v. Kerik</u>, 335 F.3d 195, 200-01 (2d Cir. 2003). In determining relatedness, courts look to the factual allegations in the EEOC

charge itself. <u>Id.</u> "[I]f the factual allegations in the EEOC charge 'suggest [two] forms of discrimination'—even though the charge itself specifies only one—so that the agency receives adequate notice to investigate discrimination on both bases, the claims are reasonably related to each other." <u>Id.</u> (second alteration in original) (quoting <u>Deravin</u>, 335 F.3d at 202).

In this case, even without using the label "<u>quid pro quo</u>" Plaintiff includes a number of references to a <u>quid pro quo</u> relationship in her EEOC charge. For example, the EEOC charge references Defendant Zagzag's alleged termination of a female employee who refused to have sex with him (Defs.' Mot. Dismiss, Ex. B ¶ 21) and Defendant Zagzag's comment that Plaintiff's position would be more "stable and secure" if she had sex with him. (<u>Id.</u> ¶ 27.) Moreover, her <u>quid pro quo</u> allegations are inherently intertwined with her sexual harassment allegations such [*19] that the EEOC would receive adequate notice to investigate. See <u>Carrero v. N.Y.C. Hous. Auth.</u>, 890 F.2d 569, 579 (2d Cir. 1989) ("Hostile environment and <u>quid pro quo</u> harassment causes of action are not always clearly distinct and separate. The discrimination which gives rise to them is not neatly compartmentalized but, as this case demonstrates, the two types of claims may be complementary to one another."); <u>Schiano v. Quality Payroll Sys., Inc.</u>, 445 F.3d 597, 604 (2d Cir. 2006) (allowing plaintiff to proceed on appeal with a quid pro quo sexual harassment claim that was characterized as a hostile work environment claim in the district court).[14] Both

---

discrimination theory. <u>See Kleinman v. Fashion Inst. of Tech.</u>, No. 16 CIV. 4348 (KPF), 2017 U.S. Dist. LEXIS 109744, 2017 WL 3016940, at *8 (S.D.N.Y. July 14, 2017). Plaintiff has satisfied this requirement with respect to the sexual harassment/hostile work environment and <u>quid pro quo</u> claims. <u>See Johnson v. Trs. Of Columbia Univ.</u>, No. 00 CIV. 8118 (WK) (RLE), 2003 U.S. Dist. LEXIS 7201, 2003 WL 2013371, at *2 (S.D.N.Y. Apr. 25, 2003), <u>report and recommendation adopted</u>, 2003 U.S. Dist. LEXIS 10547, 2003 WL 21433455 (S.D.N.Y. June 16, 2003) (plaintiff need not specifically articulate continuous discrimination theory in EEOC charge so long as that could be to grow out of the charge); Defs.' Mot. Dismiss, Ex. B ¶¶ 20-28.

[13] The Court construes this argument as applying only to Plaintiff's <u>quid pro quo</u> claims (Counts X, XI, and XII) and not her sex discrimination claims (Counts I, II, and III) despite Defendants' heading. (<u>See</u> Defs.' Mem. Law Supp. Mot. Dismiss at 5.) Defendants do not include any substantive arguments related to the sex discrimination claims, and Plaintiff includes nearly identical allegations in her Complaint and EEOC charge related to sex discrimination. (<u>Compare</u> Compl. ¶¶ 57-59 <u>with</u> Mot. Dismiss, Ex. B ¶¶ 17-19.)

[14] The Second Circuit wrote:

> Because these terms are judicially created for analytical purposes, not distinctions in the statute itself, we think it is most appropriate, at least in the case before us, to look to the substance of the alleged misconduct of which the plaintiff complains rather than the terms used to describe it. If, for example, a plaintiff were to argue that she had been demoted for refusing to respond positively to her supervisor's sexual overtures, we would [*20] think that the assertion would preserve her quid pro quo claim even if she never used the phrase "quid pro quo" in the district court to describe it.

<u>Schiano</u>, 445 F.3d at 604.

involve unwanted sexual contact with Defendant Zagzag; the difference is whether or not Plaintiff might be terminated or otherwise have her job conditions altered. Accordingly, Plaintiff exhausted her administrative remedies.

### F. Plaintiff's Gender Discrimination Claims

Defendants seek to dismiss Plaintiff's gender discrimination claims (Counts I, II, and III)[15] on the grounds that they do not meet the plausibility standard based on the difference in allegations between her emails, her EEOC charge, and the instant Complaint. As discussed supra p. 9 n.7, the Court will not consider the emails Defendants seek to introduce at this time. Defendants have not offered other arguments in support of their Motion to Dismiss the gender discrimination claims. Accordingly, Defendants' Motion to Dismiss is DENIED with respect to these claims.

### G. Plaintiff's National Origin and Ethnicity Discrimination Claims

Defendants argue that Plaintiffs claims alleging discrimination on the basis of national origin/ethnicity fail as a matter of law because they are based on one discriminatory comment and because she did not suffer any adverse employment action. The Court construes these arguments as applying to Plaintiff's national origin/ethnicity discrimination disparate treatment claims (Counts [*21] IV, V, and VI) as well as to her hostile work environment claims based on national origin/ethnicity (Counts XIII, XIV, and XV). The Court has already held that the allegations related to national origin/ethnicity discrimination are time-barred under Title VII and has dismissed Counts IV and XIII on this basis. The Court thus does not address these claims. The Court now addresses Counts V, VI, XIV, and XV.

### 1. Disparate Impact

#### a. New York State Human Rights Law — Count V

In making out a prima facie case of employment discrimination under NYSHRL,[16] the plaintiff must show: "(1) that she is a member of a protected class, (2) that she was qualified for [employment in the position], (3) that she suffered an adverse employment action, and (4) can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation . . . ." Littlejohn, 795 F.3d at 311. A plaintiff need not make out a prima facie case at the motion to dismiss stage, but she must give "plausible support" for the requirements, including to "a minimal inference of discriminatory motivation." Id. In meeting the burden to establish an inference of discrimination at this stage, a plaintiff can point to, among other things, "the employer's [*22] criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." Id. at 312 (quoting Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009)).

With respect to the third element of a prima facie case, the Second Circuit has written:

> A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material

---

[15] It is unclear to the Court which claims Defendants seek to dismiss when they refer the Plaintiff's gender discrimination claims. They may also be seeking to move with respect to the hostile work environment/sexual harassment claims (Counts VII, VIII, and IX) and the quid pro quo claims (Counts X, XI, and XII). Regardless, Defendants' Motion to Dismiss on this basis is DENIED.

[16] The Second Circuit has noted that while the protections of NYSHRL are coextensive with those of Title VII, the protections of NYCHRL are broader. See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 108-09 (2d Cir. 2013).

Case 7:21-cv-10987-VB   Document 48-3   Filed 05/18/22   Page 11 of 31

Page 10 of 13
2017 U.S. Dist. LEXIS 146776, *22

responsibilities, or other indices unique to a particular situation.

Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (citations, alterations, and quotations omitted). "[V]erbal abuse is typically insufficient to constitute an 'adverse employment action' because 'negative or otherwise insulting statements are hardly even actions, let alone "adverse actions."'" [*23] Scott v. N.Y.C. Dep't of Correction, 641 F. Supp. 2d 211, 231 (S.D.N.Y. 2009) (alterations omitted) (quoting Blake v. Potter, No. 03 Civ. 7733 (LAP), 2007 U.S. Dist. LEXIS 72703, 2007 WL 2815637, at *8 (S.D.N.Y. Sept. 25, 2007)), aff'd, 445 F. App'x 389 (2d Cir. 2011).

Because Baranetsky's words were not adverse actions, see id., the question here is whether moving Plaintiff to "a small closet-like room with no windows" and "poor ventilation" in a "very busy traffic area" constituted an adverse employment action. The Court finds that this action is a "mere inconvenience" rather than an adverse employment action. See Trachtenberg v. N.Y.C. Dep't of Educ., 937 F. Supp. 2d 460, 468 (S.D.N.Y. 2013) ("relocation of [plaintiff's] office to a windowless, poorly ventilated room does not constitute an adverse employment action"); Crawford—Bey v. N.Y. & Presbyterian Hosp., No. 08 Civ. 5454 (RJS), 2011 U.S. Dist. LEXIS 113073, 2011 WL 4530193, at *5-6 (S.D.N.Y. Sept. 30, 2011) (no adverse employment action where plaintiff was assigned to "a small, windowless office" without "proper ventilation [or] lighting and with a very offensive smelling bathroom"); DeJesus v. Starr Tech. Risks Agency, Inc., No. 03 CIV 1298 (RJH), 2004 U.S. Dist. LEXIS 19213, 2004 WL 2181403, at *12 (S.D.N.Y. Sept. 27, 2004) (plaintiff who was the only employee in his position to work in a cubicle rather than an office did not suffer adverse employment action); Staff v. Pall Corp., 233 F. Supp. 2d 516, 532 (S.D.N.Y. 2002), aff'd, 76 F. App'x 366 (2d Cir. 2003) ("Defendants' failure to provide Plaintiff with a private office or subordinates does not, as a matter of law, constitute an adverse employment action."). Courts

addressing similar office relocations are split on whether such an action constitutes an adverse employment action. Most of the cases holding that an office relocation was [*24] an adverse action, however, include further allegations of adverse actions, not just moving an employee's workspace. See Pellei v. Int'l Planned Parenthood Fed'n/W. Hemisphere Region, Inc., No. 96 Civ. 7014, 1999 U.S. Dist. LEXIS 15338, 1999 WL 787753 at *12-13 (S.D.N.Y. 1999) (reassignment to a "small, poorly lit, isolated cubicle" was an adverse employment action where plaintiff was also terminated and had responsibilities taken away from her); Hughes v. Xerox Corp., 37 F. Supp. 3d 629, 643 (W.D.N.Y. 2014) (writing that "[w]hile the simple relocation of Plaintiff's office or reassignment of different job duties would not rise to the level of a plausible adverse employment action, Plaintiff's allegations suggest that these actions were taken as part of a concerted effort to alter the terms and conditions of Plaintiff's employment by stagnating any opportunity for growth and represented a setback in her career," where plaintiff's office was reassigned, job duties were taken away, plaintiff was reported to human resources, and was required to take an anger management course); Scafidi v. Baldwin Union Free Sch. Dist., 295 F. Supp. 2d 235, 239 (E.D.N.Y. 2003) (holding that relocation to an office that "could be accessed only by a long flight of stairs" which aggravated plaintiff's disability, later reassignment to a storage room, assignment of extra work, and denial of access to clerical staff qualified as an adverse employment action); but see Myers v. N.Y.C. Human Rights Comm'n, No. 04 CIV. 00543 (JCF), 2006 U.S. Dist. LEXIS 6053, 2006 WL 344754, at *11 (S.D.N.Y. Feb. 15, 2006) (assuming without deciding that transfer [*25] of office from ninth to tenth floor where it was isolated and had harsh lighting constituted adverse employment action but granting summary judgment for defendant on other grounds). Because there was no adverse employment action, Plaintiff cannot make out a disparate treatment case for national origin/ethnicity discrimination under NYSHRL.

Accordingly, Count V of the Complaint is DISMISSED.[17]

b. New York City Human Rights Law — Count VI

NYCHRL is "broader and more remedial" than NYSHRL or Title VII. Williams v. N.Y.C. Hous. Auth., 61 A.D.3d 62, 872 N.Y.S.2d 27, 38 (N.Y. App. Div. 1st Dep't 2009). Thus, under the NYCHRL, to make out a national origin/ethnicity discrimination claim, "the plaintiff need only demonstrate 'by a preponderance of the evidence that she has been treated less well than other employees because of her [national origin/ethnicity].'" Mihalik, 715 F.3d at 110 (quoting Williams, 872 N.Y.S.2d at 39); see also Carter v. Verizon, No. 13 CIV. 7579 (KPF), 2015 U.S. Dist. LEXIS 6370, 2015 WL 247344, at *5 (S.D.N.Y. Jan. 20, 2015) ("Mihalik arose in the context of a summary judgment motion, but its principles have been extended by the Second Circuit to motions to dismiss, albeit in non-precedential decisions."). Even under the more liberal standard, the NYCHRL is not a "general civility code," Williams, 872 N.Y.S.2d at 40 (quoting Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 81, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)), and "[t]he plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive." Mihalik, 715 F.3d at 110.

Plaintiff has met this low [*26] burden here. She has alleged that Baranetsky treated her differently from other employees because she is Russian. (See Compl. ¶¶ 50-56.) Defendants' Motion to Dismiss with respect to Count VI is therefore DENIED.

2. Hostile Work Environment

a. New York State Human Rights Law — Count XIV

Hostile work environments that are "sufficiently severe or pervasive to alter the conditions of the victim's employment" are actionable under the NYSHRL. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986) (alterations, citations, and quotations omitted); see also Pucino v. Verizon Wireless Commc'ns, Inc., 618 F.3d 112, 117 n.2 (2d Cir. 2010) (applying same standard to NYSHRL hostile work environment claim as to Title VII hostile work environment claim). The conduct must be both objectively hostile, in that a reasonable person would find the environment to be abusive, and subjectively hostile, in that the plaintiff actually perceived it to be abusive. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993); see also Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) ("To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile [*27] or abusive'; and (3) 'creates such an environment because of the plaintiff's sex.'") (alterations omitted) (quoting Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir. 2001)).

To determine whether a work environment is hostile, a court must look to the surrounding circumstances including:

the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

Harris, 510 U.S. at 23.

To survive a Rule 12(b)(6) motion to dismiss, a hostile work environment plaintiff "need only plead

---

[17] Although the Title VII national origin/ethnicity discrimination claim (Count IV) are time-barred, it is also insufficient for the same reasons as Count V.

2017 U.S. Dist. LEXIS 146776, *27

facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" Patane, 508 F.3d at 113 (alteration in original) (quoting Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003)).

While this burden is relatively low, Plaintiff has failed to meet it. "Isolated incidents generally will not suffice to establish a hostile environment [*28] unless they are extraordinarily severe." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 547 (2d Cir. 2010); see also Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) ("For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments.") (alterations, quotations, and citations omitted). Plaintiff has made general allegations about Baranetsky's hostility toward Russians (e.g., Compl. ¶ 53) but has only alleged one particular incident where Baranetsky made an anti-Russian comment to her. (Compl. ¶ 51.) The comment was not extraordinarily severe, nor has Plaintiff alleged that the overall environment was sufficiently severe and pervasive so as to constitute a hostile work environment. See Varughese v. Mount Sinai Med. Ctr., No. 15-1328, 693 Fed. Appx. 41, 2017 U.S. App. LEXIS 12123, 2017 WL 2889483, at *1 (2d Cir. July 7, 2017) (holding that, where supervisor made derogatory comments roughly four times over the course of three years, conduct was not severe and pervasive); Sanchez Day v. N.Y.C. Dep't of Consumer Affairs, No. 10 CIV. 4888 (RWS), 2016 U.S. Dist. LEXIS 33606, 2016 WL 1070843, at *5 (S.D.N.Y. Mar. 15, 2016) (using slur two to four times in eighteen-month period did not amount to hostile work environment). Thus, Count XIV of the Complaint is DISMISSED.[18]

b. New York City Human Rights Law — Count XV

Courts have applied largely the same standard to hostile work environment claims [*29] under NYCHRL as they have to disparate impact claims under NYCHRL. Again, a plaintiff need only allege that she was treated less well because of her national origin or ethnicity. See Mihalik, 715 F.3d at 110; Williams, 872 N.Y.S.2d at 39. While a defendant can avoid liability for petty slights and trivial inconveniences, the hostile work environment allegations do not need to rise to the level of severe or pervasive to establish liability under NYCHRL. See Mihalik, 715 F.3d at 110.

For the same reasons Plaintiff's claim in Count VI survives, Plaintiff's claim in Count XV for hostile work environment based on national origin/ethnicity survives Defendants' Motion to Dismiss. As with the disparate treatment claim, Plaintiff alleges that she was treated worse because she is Russian. The Court is not prepared to say at this early stage that Baranetsky's alleged conduct, and NYU's alleged tolerance of it, amounts only to a petty slight or trivial inconvenience. Accordingly, Plaintiff's Motion to Dismiss Count XV is DENIED. Cf. Lenart v. Coach, Inc., 131 F. Supp. 3d 61, 69 (S.D.N.Y. 2015) (dismissing Title VII and NYSHRL hostile work environment claims while denying motion to dismiss with respect to NYCHRL hostile works environment claim).

H. Leave to Amend

In summary, the following Counts remain:

- Sex discrimination: Count I [*30] (Title VII, against NYU Defendants), Count II (NYSHRL), and Count III (NYCHRL)
- National origin/ethnicity disparate treatment: Count VI (NYCHRL)
- Hostile work environment/sexual harassment: Count VII (Title VII, against NYU Defendants), Count VII (NYSHRL), and Count IX (NYCHRL)

- Quid pro quo sexual harassment: Count X

---

[18] Although the Title VII national origin/ethnicity discrimination hostile work environment claim (Count XIII) is time-barred, it is also insufficient for the same reasons as Count XIV.

(Title VII, against NYU Defendants), Count XI (NYSHRL), and Count XII (NYCHRL)
- Hostile work environment/national origin/ethnicity: Count XV (NYCHRL)
- Retaliation: Count XVI (Title VII, against NYU Defendants), Count XVII (NYSHRL), and Count XVIII (NYCHRL).

The Court has dismissed the following Counts:
- National origin/ethnicity disparate impact: Count IV (Title VII; time-barred) and Count V (NYSHRL; insufficient as a matter of law)
- Hostile work environment/national origin/ethnicity: Count XIII (Title VII; time-barred) and Count XIV (NYSHRL; insufficient as a matter of law).

The remaining question is whether Plaintiff shall be given leave to replead with respect to any of the dismissed claims. When a complaint has been dismissed, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). However, a court may dismiss without leave to amend when amendment would [*31] be "futile," or would not survive a motion to dismiss. <u>Hutchison v. Deutsche Bank Sec. Inc.</u>, 647 F.3d 479, 491 (2d Cir. 2011).

It would be futile for Plaintiff to amend her claims in Counts IV and XIII because they are time-barred. Thus, leave to amend is DENIED with respect to Counts IV and XIII. It is not likely that Plaintiff has additional facts to allege that would cure the problems that caused the dismissal of Counts V and XIV under the NYSHRL. Additionally, Counts VI and XV under the NYCHRL have survived. Thus, justice does not require that Plaintiff be granted leave to amend Counts V and XIV. Accordingly, leave to amend is also DENIED with respect to Counts V and XIV.

III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

Defendants are to answer the remaining Counts within 30 days of the date of this Order.

SO ORDERED.

DATED: New York, NY

September 7, 2017

/s/ Deborah A. Batts

Deborah A. Batts

United States District Judge

---

**End of Document**

⚠ Caution
As of: May 17, 2022 4:11 PM Z

# Mitra v. State Bank of India

United States District Court for the Southern District of New York

September 6, 2005, Decided ; September 6, 2005, Filed

03. Civ. 6331 (DAB)

**Reporter**

2005 U.S. Dist. LEXIS 19138 *; 2005 WL 2143144

SIPRA MITRA, Plaintiff, - against - STATE BANK OF INDIA, T.S. VAIDYANATHAN, Individually and in his Official Capacity, and S. IYENGER, Individually and in his Official Capacity, Defendants.

**Disposition:** [*1] Defendants Vaidyanathan and Iyenger's motion to dismiss GRANTED IN PART and DENIED IN PART.

**Counsel:** For Sipra Mitra, Plaintiff: Roya Moghadassi Weiss, Moghadassi & Associates, New York, NY.

For State Bank of India, Defendant: Edward A. Brill, Tracey Ilene Levy, Proskauer Rose LLP, New York, NY.

For T.S. Vaidyanathan, Defendant: Edward A. Brill, Proskauer Rose LLP, New York, NY.

**Judges:** Deborah A. Batts, United States District Judge.

**Opinion by:** Deborah A. Batts

# Opinion

## *MEMORANDUM & ORDER*

DEBORAH A. BATTS, United States District Judge.

Plaintiff Sipra Mitra brings suit against Defendants the State Bank of India ("SBI"), T.S. Vaidyanathan

and S. Iyenger [1] for allegedly discriminating against her with respect to the terms, conditions and privileges of her employment based on her sex and age in violation of the New York State and New York City Human Rights Laws, N.Y. Exec. Law. § 296 *et seq.;* N.Y.C. Admin. Code § 8-107 *et seq.,* and for administering voluntary retirement severance packages for employees in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Section 1001 *et seq.* Presently before the Court is Defendants [*2] Vaidyanathan and Iyenger's (collectively "Individual Defendants") motion to dismiss the action for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), and for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons stated below, Defendants' motion is GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

Plaintiff, an American citizen of Indian national origin, was employed in SBI's New York office from 1971 until her termination in 2003. She began her employment with SBI as a Customer Support Representative. (1st Am. Compl. P2). [2] In 1979, as

---

[1] In the caption of her First Amended Complaint, Plaintiff incorrectly referred to this Individual Defendant as "I. Ayenger." Hereafter, the official docket and the captions in all papers filed in this case shall contain the correct spelling of Defendant Iyenger's name.

[2] On a motion to dismiss under Rule 12(b)(6), the facts alleged in the complaint are presumed to be true, and factual inferences are drawn in the plaintiff's favor. *Mills v Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir. 1993).

a result of her excellent job performance, Plaintiff was promoted to the position of Deputy Manager. [*3] (*Id.*). In 1985, Plaintiff began working as the Deputy Manager in SBI's Foreign Exchange and Money Operations Department. (*Id.*). In 1988, an unposted managerial position became available in SBI's letters of credit department. Upon learning of this information, Plaintiff, as the only female deputy manager and the most senior deputy manager in SBI, applied for the position to SBI's Vice President of Operations. However, despite her level of experience and credentials, the position was given to a male employee with less professional experience and seniority. (*Id.* PP19, 22).

In 1990 SBI began a policy of sending its managerial employees to India for specialized training. (*Id.* P21). However, rather than provide Plaintiff with such an opportunity, SBI [*4] instead sent only male employees with less seniority and/or professional experience. (*Id.* P23). As a result, on or about January, 2001, Plaintiff repeated her request to participate in said training program. Again, Plaintiff was denied the training opportunity, and two male deputy managers were instead selected to attend the program. (*Id.* P26).

Similarly, beginning in 1992 and continuing until her termination in 2003, SBI consistently denied Plaintiff salary increases. (*Id.* P25). Moreover, she was allegedly told that there had been a salary cap imposed on her managerial title and/or position, while other employees with similar supervisory duties continued to receive salary increases. (*Id.*).

In or about February 2002, it became well-known within SBI that certain Indian bank officials, including Indian employees with the same title or position and/or responsibilities and/or duties as Plaintiff, were offered a voluntary retirement severance package ("VRS"). (*Id.* P28). The VRS package was offered to bank officials who were above 65 years of age or who had served SBI for at least 15 years. The VRS paid an eligible employee three weeks of compensation for every year [*5] of

service with defendant SBI, and 18 months of medical coverage. (*Id.* P33). However, while the SBI policy manual provides for the payment of appropriate severance pay, SBI did not issue a written severance policy specifically concerning the VRS package. (*Id.* PP29, 30). Instead, by providing and administering the VRS to the Indian bank officials, SBI has an established pattern and practice of making severance payment to its employees. (*Id.* P31). All the while, SBI maintained a welfare benefit plan for providing severance benefits for employees within the meaning of ERISA. (*Id.* P32).

In the fall of 2002, Plaintiff and four other New York-based deputy managers of SBI spoke to the Individual Defendants concerning the VRS package. (*Id.* P36). Both promised that eligible New York-based managers would be offered the same VRS package as that which would be administered to Indian Bank officials. (*Id.* P34). Subsequently, Plaintiff again applied for a promotion to a managerial position, but a younger male employee with less experience was promoted instead. (*Id.* PP35-36).

On May 27, 2003, Plaintiff was terminated after 32 years of service and replaced by a male employee. [*6] (*Id.* PP37, 41). Following her termination, Plaintiff contacted the bank headquarters in India and was assured by the officials that she would be offered the same VRS package offered to the Indian officials of the bank. (*Id.* P38). Nevertheless, she was not offered the VRS package as promised, but instead was given a maximum of 20 weeks of severance pay for her service to the bank. (*Id.* P40).

On July 23, 2003, Plaintiff filed suit in New York State Supreme Court, New York County against SBI and Vaidyanathan, alleging employment discrimination on the basis of sex and age in violation of the New York State and New York City Human Rights Laws, N.Y. Exec. Law § 296, *et seq.;* N.Y.C. Admin. Code § 8-107, *et seq.* On August 21, 2003, SBI and Vaidyanathan filed a Notice of Removal with this Court pursuant to 28

U.S.C. § 1441(d) on grounds that, because SBI is an agent of a foreign government, Plaintiff's lawsuit constitutes a civil action against a foreign state as defined by the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603(a). (*See* Notice of Removal, dated August 21, 2003, PP3-4). Thereafter, on September 23, 2003, Plaintiff [*7] filed an Amended Complaint, adding Iyenger as a defendant and an additional cause of action against all three Defendants alleging that they had violated ERISA by denying her the same severance package they were offering and administering to Indian SBI officials of similar rank. (1st Am. Compl. PP57-58).

The Individual Defendants now move to dismiss [3] all claims against them pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted and/or Rule 12(b)(1) for lack of subject matter jurisdiction.

## II. DISCUSSION

### A. Rule 12(b)(1) Dismissal

While Individual Defendants' Notice of Motion mentions Rule 12(b)(1) as a ground for dismissal, nowhere in their moving or reply papers do they set forth any basis for dismissal for lack of subject matter jurisdiction. Moreover, Defendant Vaidyanathan, in his Notice of Removal, acknowledged that the [*8] Court has diversity jurisdiction over this case. (Notice of Removal PP3-5). Accordingly, the Court rejects Individual Defendants' argument for 12(b)(1) dismissal as utterly meritless.

### B. Rule 12(b)(6) Dismissal

### 1. Legal Standard

In a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, it is generally accepted that a complaint should not be dismissed unless it is entirely clear that the plaintiff is unable to prove any set of facts that would support the claim and thereby grant him relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S.Ct. 99, 102 (1957). The complaint must be read "generously, accepting as true the factual allegations in the complaint and drawing all inferences in favor of the pleader." *Bolt Elec. v. City of New York,* 53 F.3d 465, 469 (2d Cir. 1995); *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir. 1993). A court should grant the motion to dismiss only "if, after viewing a plaintiff's allegations in this most favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. [*9] " *Walker v. City of New York,* 974 F.2d 293, 298 (2d Cir. 1992) (*quoting Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119 (2d Cir. 1991)). The Court "is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir. 1985). In ruling on a 12(b)(6) motion, a court may consider the complaint as well as any additional documents incorporated into or appended to the complaint. *See Tarshis v. Riese Org.,* 211 F.3d 30, 39 (2d Cir. 2000).

### 2. NYSHRL and NYCHRL Claims

Individual Defendants argue that Plaintiff's New York State and New York City Human Rights Law claims against them are legally insufficient because Plaintiff fails to allege any specific allegations of actual discriminatory conduct on their parts. (Memorandum of Law In Support of the Motion to Dismiss the Complaint ["Def. Mem."] at 5-6; Reply Memorandum of Law in Support of Motion to Dismiss the Complaint ["Def. Reply"] at 2-3).

The New York State Human Rights Law (NYSHRL) makes it unlawful for "an employer or licensing agency, because [*10] of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, genetic predisposition, or carrier status, or marital status of any individual, . .

---

[3] Defendant SBI, meanwhile, has answered the First Amended Complaint. (*See* Answer of Defendant State Bank of India, filed October 15, 2003).

. to bar or discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). As the language of the statute makes clear, liability for discrimination extends only to a plaintiff's employer, and thus an individual corporate manager or supervisor cannot be held liable under § 296(1)(a) unless he or she is "shown to have an ownership interest in [the business employing the plaintiff] or power to do more than carry out personnel decisions made by others." *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 542, 473 N.E.2d 11, 483 N.Y.S.2d 659, 660 (1984) (per curiam); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) (same) (citing *Patrowich*); *Smith v. AVSC Int'l, Inc.*, 148 F. Supp. 2d 302, 308-09 (S.D.N.Y. 2001) (same). However, under § 296(6), which makes it unlawful "for any person to aid, abet, incite, compel, coerce or attempt any of the acts forbidden [*11] under [the NYSHRL]," N.Y. Exec. Law § 296(6), an individual supervisor or corporate employee who, while not an "employer," "actually participates in the conduct giving rise to the discrimination claim may be held liable" as an aider and abettor of the discrimination. *Tomka*, 66 F.3d at 1317; *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004) (citing *Tomka*); *D'Amico v. Commodities Exch.*, 235 A.D.2d 313, 315, 652 N.Y.S.2d 294, 296 (N.Y. App. Div. 1st Dep't 1997).

Meanwhile, the New York City Human Rights Law (NYCHRL), which prohibits "an employer or *an employee or agent thereof*" from discharging a person from or discriminating against him in terms, conditions, or privileges of employment on account of "age, race, creed, color, national origin, gender, disability, marital status, sexual orientation, or alienage or citizenship status," permits even individual corporate employees to be held principally liable for employment discrimination. N.Y.C. Admin. Code § 8-107(1)(a) (*emphasis*

added). [4] [*13] However, the prerequisite for individual liability under the NYCHRL is identical to that of § 296(6) of the State Human [*12] Rights Law, i.e., "the defendant at issue must have actually engaged in a discriminatory act." *Smith*, 148 F.Supp.2d at 308 (citing *Stallings v. U.S. Electronics, Inc.*, 270 A.D.2d 188, 707 N.Y.S.2d 9 (N.Y. App. Div. 1st Dep't 2000)); *Feingold*, 366 F.3d at 158 (noting that the "same standards of analysis" used to evaluate aiding and abetting claims under the NYSHRL apply to claims against individual defendants under the NYCHRL) (listing cases). Thus, under either the NYSHRL or NYCHRL, an individual corporate manager or supervisor may only be held liable for discrimination if he or she (1) has an ownership interest in the plaintiff's employer, (2) has the power to do more than carry out personnel decisions made by others, or (3) actually participated in one or more discriminatory acts. [5]

In the present case, Plaintiff's First Amended Complaint fails to allege any facts tending to show that the Individual Defendants fit into any of the three categories of defendants subject to individual liability under the NYSHRL or NYCHRL. The First Amended Complaint does not specifically allege that, at the time of the alleged discrimination against Plaintiff, Vaidyanathan and Iyenger had ownership interests in SBI or had the authority to make the relevant personnel decisions on their own, and the fact that they held the positions of Country

---

[4] The NYCHRL also contains an aider/abettor liability provision similar to the one contained in the NYSHRL. *See* N.Y.C. Admin Code § 8-107(6) ("It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter. . .")

[5] Contrary to Individual Defendants' assertion, individual corporate supervisors or managers who are "employers" can be held vicariously liable for discriminatory acts under the NYSHRL even if they did not personally commit such acts as long as they "became party to [the discrimination] by encouraging, condoning, or approving it." *Harrison v. Indosuez*, 6 F.Supp.2d 224, 233 n.5 (S.D.N.Y. 1998) (quoting *State Div. of Human Rights v. St. Elizabeth's Hosp.*, 66 N.Y.2d 684, 687, 487 N.E.2d 268, 496 N.Y.S.2d 411, 412 (1985)).

Head and Branch [*14] Head does not, by itself, establish either of these prerequisites to individual NYSHRL and NYCHRL liability. *See Patrowich,* 63 N.Y.2d at 542 ("A corporate employee, *though he has a title as an officer and is the manager or supervisor of a corporate division,* is not individually subject to suit. . . under New York's Human Rights Law. . . if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others.") (*emphasis added*). Moreover, the Amended Complaint does not specifically allege that either Individual Defendant actually participated in any of the alleged discriminatory acts against the Plaintiff.

Plaintiff in turn alleges in her opposition papers to the present motion that both Individual Defendants were shareholders of, and thus had an ownership interest in SBI, that Defendant Vaidyanathan himself made SBI's employment policies, and that Vaidyanathan directly participated in terminating Plaintiff's employment with SBI because he was the one that gave her a few days notice of her termination. (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint ["Pl. Mem."] [*15] at 8; Affidavit of Sipra Mitra ["Mitra Aff."] PP4-5, 7, 12). However, while these allegations are clearly relevant to whether Plaintiff should be granted leave to amend her Complaint again, *see* Part II.C. *infra,* they do not change the fact that the First Amended Complaint itself fails to state legally sufficient claims for relief against the Individual Defendants under either the NYSHRL or NYCHRL. Accordingly, Rule 12(b)(6) dismissal of these claims is warranted.

3. ERISA Claim

The Individual Defendants also contend that Plaintiff's ERISA claim against them fails as a matter of law because there is no allegation in the First Amended Complaint that Vaidyanathan or Iyenger are plan administrators for the VRS package. (Def. Mem. at 6).

The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.,* is a "comprehensive and reticulated statute" that governs employee benefit plans. *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 124 L. Ed. 2d 161, 113 S. Ct. 2063 (1993). Its original design was implemented to protect employee pensions and benefit plans by "setting forth certain general fiduciary duties applicable to the management of both pension and [*16] non-pension benefit plans." *Varity Corp. v. Howe,* 516 U.S. 489, 496, 134 L. Ed. 2d 130, 116 S. Ct. 1065 (1996). Accordingly, "in a recovery of benefits claim, only the plan, and the administrators and trustees of the plan in their capacity as such, may be held liable." *Crocco v. Xerox Corp.,* 137 F.3d 105, 107 (2d Cir. 1998) (*quoting Leonelli v. Pennwalt Corp.,* 887 F.2d 1195 (2d Cir. 1989)).

An ERISA "plan administrator" is "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary [of Labor] may by regulation prescribe." 29 U.S.C. § 1002(16)(A). A "plan sponsor" in turn is "the employer in the case of an employee benefit plan established or maintained by a single employer," and an "employer" for ERISA purposes includes "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. §§ 1002 (5) [*17] ,(16)(B).

The Individual Defendants contend that nowhere in the First Amended Complaint does Plaintiff allege facts tending to show that they meet the ERISA definition of plan administrators with respect to the VRS package. In fact, they point out, the Complaint specifically alleges only that SBI is an ERISA plan administrator. (Def. Mem. at 6; 1st Am. Compl. P9). Plaintiff, however, argues that the First Amended Complaint, which alleges that the Individual Defendants promised that she and other

"eligible local-based bank officials (deputy managers)" would be offered the same VRS package" as Indian bank officials (1st Am. Compl. P34), pleads facts tending to show that the Individual Defendants "acted in the capacity of or had the discretionary authority or responsibility of administering the VRS package," i.e., that they were *de facto* VRS package plan administrators. (Pl. Mem. at 6). [6] [*19] The Individual Defendants in turn submit a written copy of what they claim is the VRS plan at issue and note that because the written plan specifically designates only SBI as the plan administrator, they cannot, under clear Second Circuit precedent, be sued as "*de facto* plan administrators. [*18] " (Reply Memorandum of Law in Further Support of Motion to Dismiss ["Def. Reply"] at 4; Affidavit of Arun Bisaria ["Bisaria Aff."], Ex. A (The State Bank of India Voluntary Retirement Plan for Local 2110-Represented Employees) P6). [7]

The Individual Defendants are quite correct that the law of this Circuit prohibits so-called "*de facto* plan administrators" from being sued under ERISA for denial of employee benefits when the benefit plan at issue expressly designates one or more plan administrators. *See Crocco,* 137 F.3d at 107 (holding that plaintiff's employer could not, as de-

facto plan administrator, be held jointly liable with named plan administrator in a suit to recover benefits under § 502(a)(1)(B) of ERISA). However, in the present case, the Court is not convinced that the written plan submitted by the Individual Defendants is in fact the plan under which Plaintiff is seeking to recover benefits. After all, the VRS package for which Plaintiff claims she was promised and was never reduced to writing, was [*20] allegedly offered only to Indian SBI officials and select American SBI managers (1st Am. Compl. PP29, 34), while the written plan submitted by the Individual Defendants covers "Local 2110-Represented Employees" of SBI. (Bisaria Aff., Ex. A). Thus the Court must assume, for the purposes of the present motion, that there were no specifically-designated plan administrators for the specific VRS package at issue. Moreover, while SBI, as Plaintiff's employer and the sponsor of the VRS package, would therefore be deemed the plan administrator, *see* 29 U.S.C. § 1002(16)(A)(ii), the Individual Defendants, to the extent they were in fact administering the VRS package on SBI's behalf, would qualify as employers, plan sponsors, and therefore plan administrators under ERISA. *See United States v. Carson,* 52 F.3d 1173, 1189 (2d Cir. 1995) (holding that where union's pension plan did not name a plan administrator, union officer who acted on behalf of union in relation to the union's pension plan was an employer, plan sponsor and plan administrator under §§ 1002 (5) and (16)).

Unfortunately for Plaintiff, none of the aforementioned allegations in the First [*21] Amended Complaint, even if true, would tend to show that the Individual Defendants acted on SBI's behalf with respect to the administration of the VRS package. The Complaint merely alleges that the Individual Defendants promised Plaintiff and four other U.S.-based SBI deputy managers that they would be offered the same VRS package as administered to SBI Indian officials. (1st Am. Compl. P34). However, the mere fact that the Individual defendants made such a promise does not, by itself, suggest they could and did take part

---

[6] Plaintiff actually argues that the Individual Defendants meet the statutory definition of plan fiduciaries under 29 U.S.C. § 1002(21)(A) rather than plan administrators under § 1002(a)(16). (Pl. Mem. at 6-7). However, because Plaintiff appears to be seeking recovery of damages and plan benefits for herself rather on behalf of the plan for a breach of fiduciary duty to the plan (*see* 1st Am. Compl. PP45, 56-58), she may only sue under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), which only permits suits against plan administrators and not other plan fiduciaries. *See Crocco,* 137 F.3d at 107 n.2 (noting that plan beneficiary seeking recovery of plan benefits for herself could only sue under § 502(a)(1) (B), which permits suits only against plan administrators, rather than under § 502(a)(2), which permits suits seeking damages on behalf of the plan itself to be brought against any plan fiduciaries) (citing *Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir. 1993)).

[7] Because the plan for the VRS package is incorporated by reference into the First Amended Complaint (*see* 1st Am. Compl. P28), the Court may consider the written plan submitted by the Individual Defendants in ruling on their Rule 12(b)(6) motion. *See Tarshis,* 211 F.3d at 39.

in deciding to whom SBI's VRS package benefits would be administered. Therefore, having failed to plead facts sufficient to establish that the Individual Defendants are employee benefit plan administrators, Plaintiff cannot state a viable claim against them under ERISA.

C. Leave to Amend

In addition to opposing the present motion, Plaintiff, in her opposition papers, requests leave to amend her Complaint to cure the aforementioned deficiencies in her ERISA, NYSHRL and NYCHRL claims against the Individual Defendants. (Pl. Mem. at 7, 9-10). Under Federal Rule of Civil Procedure 15(a), leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a) [*22] . While "it is the usual practice upon granting a motion to dismiss to allow leave to replead," *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir. 1991) (citing *Ronzani v. Sanofi S.A.,* 899 F.2d 195, 198 (2d Cir. 1990), a court may deny leave to amend on grounds of bad faith, undue prejudice to the opposing party, repeated failures to cure deficiencies in amendments previously allowed, or futility of amendment. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Ultimately, however, the decision to grant leave to amend a complaint rests within the discretion of the district court. *Id.*

The Individual Defendants argue that Plaintiff's request is procedurally deficient because she has not filed a formal motion for leave to amend, has not "set forth with particularity the grounds supporting her application," has not presented "any justifiable excuse for her failure to incorporate the currently proposed amendments in her First Amended Complaint," and has deprived Defendants of notice of the precise nature of her proposed pleading changes by failing to provide them with a copy of her proposed pleading amendments. (Def. [*23] Reply at 5). As an initial matter, Plaintiff's failure to file a formal motion for leave to amend is not fatal to her request. *See McLaughlin v. Anderson,* 962 F.2d 187, 195 (2d

Cir. 1992) ("The lack of a formal motion is not a sufficient ground for a district court's dismissal without leave to amend, so long as the plaintiff has made its willingness to amend clear.").

Further, while Plaintiff has not submitted a proposed Second Amended Complaint to the Court or Defendants, her motion opposition brief and affidavit clearly detail the additional factual allegations she would include in such complaint to cure the deficiencies in her ERISA, NYSHRL and NYCHRL claims- e.g., the Individual Defendants' ownership interest in SBI (Mitra Aff. P7; Pl. Mem. at 10), Defendant Vaidyanathan's personal involvement in her termination (*id.* P12), and the Individual Defendants' authority to make and enforce personnel and management decisions on behalf of SBI, including the possible exercise of discretion with respect to the administration of the VRS package to U.S-based SBI managers. (*Id.* PP4-5, 11; Pl. Mem. at 7) - so that Defendants have clearly been put on notice of the precise [*24] nature of her proposed changes. [8] Finally, while Plaintiff has already amended her Complaint once previously, such amendment, which was done as of right and simply added Defendant Iyenger and her ERISA claim, was not made with notice of or with the intention to cure the aforementioned pleading deficiencies, and thus Plaintiff is not guilty of "repeated failures to cure deficiencies in amendments previously allowed." *Foman,* 371 U.S. at 182. Therefore, Plaintiff's request for leave to amend is not procedurally deficient.

[*25] The Individual Defendants also contend that Plaintiff's proposed amendments would be futile

---

[8] Indeed, the inclusion of such specific proposed changes in her motion opposition papers distinguishes Plaintiff's request for leave to amend from that of the plaintiff in *AT&T Corp. v. American Cash Card Corp.,* 184 F.R.D. 515 (S.D.N.Y. 1999), a case the Individual Defendants contend stands for the proposition that an actual proposed amended complaint must accompany a request for leave to amend, because the *AT&T* plaintiff not only failed to submit a proposed amended complaint, but did not even "provide the Court with any suggestion as to the nature of the proposed amendments *in any of its papers submitted to the Court.*" *Id.* at 520 (emphasis added).

because, even with the additional factual allegations in her motion opposition papers, she would still fail to state viable ERISA, NYSHRL, and NYCHRL claims against them. (Def. Reply at 5-6). The Court disagrees. After all, Plaintiff alleges in her motion opposition papers that both Vaidyanathan and Iyenger were personally involved in the decision to terminate her and replace her with a younger male employee (Mitra Aff. P12, Pl. Mem. at 9), which, if true, would satisfy the actual participation prerequisite for individual liability under the NYCHRL and § 296(6) of the NYSHRL. Further, Plaintiff's additional allegation that both Individual Defendants had ownership interests in SBI and that Vaidyanathan, as SBI Country Head, had the authority to make personnel decisions for all the SBI branches in the U.S. (Mitra Aff. PP4, 7; Pl. Mem. at 10), would, if true, establish that they were "employers" for the purposes of the NYSHRL and NYCHRL. Finally, Plaintiff's additional allegations that the Individual Defendants, by virtue of their positions as Country and New York Branch Head, had the authority [*26] to "make and enforce [SBI's] policies," and that they decided independently of SBI management in India to deny Plaintiff the VRS package (Mitra Aff. PP4, 11; Pl. Mem. at 7) tend to show that the Individual Defendants administered the VRS package on behalf of SBI and, as such, meet the definition of employer, sponsor and plan administrator under ERISA.

Accordingly, because Plaintiff's proposed amendments would not be futile, Plaintiff's request for leave to amend is GRANTED.

D. Leave to Conduct Immediate Discovery

Plaintiff's motion opposition brief also includes a request for an order authorizing her to conduct expedited discovery of the Individual Defendants pursuant to Federal Rule of Civil Procedure 26(d). [9]

(Pl. Mem. at 10-11). "Although [Rule 26(d)] does not say so, it is implicit that some showing of good cause should be made to justify such an order." Charles Alan Wright, *et al.,* 8 Federal Practice and Procedure Civil § 2046.1 at 592 (2d ed. 1994). Requests for expedited discovery are typically appropriate in cases "involving requests for preliminary injunction or motions challenging personal jurisdiction." Fed.R.Civ.P. 26 advisory committee notes to 1993 Amendments [*27] to Subdivision (d).

Plaintiff contends that, due to SBI's "policy and practice of changing the higher echelon of the managerial and supervisory employees," the Individual Defendants were to be stationed in New York for a period of four years, which either has expired or soon will expire, after which they will return to India, thereby raising "substantial barriers to the conduct of discovery in this case." (Pl. Mem. at 11). However, if the Individual Defendants are still employees of SBI, and there is no indication that they are not, Plaintiff will likely be able to obtain discovery from them at any point through service of Rule 30(b)(6) deposition notices and subpoenas [*28] on SBI, who will almost certainly have to designate the Individual Defendants to testify on its behalf given their alleged involvement in the events recounted in Plaintiff's Complaint. *See* Fed.R.Civ.P. 30(b)(6) (providing that a party may notice and subpoena for deposition "a public or private corporation" and that such corporation "shall designate one or more officers, directors, or managing agents, or other persons" to testify on its behalf, "and may set forth, for each person designated, the matters on which the person will testify."). Thus Plaintiff has failed to provide good cause for commencing discovery immediately, and, as such, her request for expedited discovery is denied.

III. CONCLUSION

---

[9] Plaintiff actually cites to Rule 26(c)(2) as the basis for its expedited discovery request; however, Rule 26(c)(2) deals with protective orders, while Rule 26(d), which gives district courts the power to

order that discovery take places before the parties' initial Rule 26(f) discovery conference, is the appropriate vehicle for Plaintiff's request.

For the reasons stated above, Defendants Vaidyanathan and Iyenger's motion to dismiss is GRANTED IN PART and DENIED IN PART as follows:

(1) All of Plaintiffs' causes of action against the Defendants Vaidyanathan and Iyenger are DISMISSED WITHOUT PREJUDICE under F.R.C.P. 12(b)(6) for failure to state a claim upon which relief may be granted;

(2) However, dismissal of Plaintiffs' claims against Defendants Vaidyanathan and Iyenger under F.R.C.P. 12(b)(1) for lack of subject [*29] matter jurisdiction is DENIED.

Plaintiff may amend her First Amended Complaint within forty-five (45) days of the date of this Order solely for the purpose of curing the deficiencies in her claims against the Individual Defendants. The Individual Defendants shall in turn respond to such Second Amended Complaint within thirty (30) days of being served with it. Finally, Plaintiff's request for expedited discovery with respect to the Individual Defendants is DENIED.

SO ORDERED

DATED: New York, New York

September 6, 2005

Deborah A. Batts

United States District Judge

 Positive

As of: May 17, 2022 4:12 PM Z

# Monastra v. NYNEX Corp.

United States District Court for the Southern District of New York

September 8, 2000, Decided ; September 12, 2000, Filed

99 Civ. 8917 (RCC)

**Reporter**

2000 U.S. Dist. LEXIS 13142 *; 165 L.R.R.M. 2500; 141 Lab. Cas. (CCH) P10,818

MARIE MONASTRA, Plaintiff, -v- NYNEX CORPORATION, THOMAS SERGI, ERNEST HOFFMAN, RODDY HARRINGTON, MICHAEL ANTONACCI, and DENNIS LE DUC, Defendants.

**Disposition:** [*1] Plaintiff's motion to remand denied and defendant Le Duc's motion for judgment on the pleadings, dismissing the case as against him, granted.

**Counsel:** For MARIE MONASTRA, plaintiff: Nancy Zecca, Marshall B. Bellovin, Ballon, Stoll, Bader & Nadler, P.C., New York, NY.

For NYNEX CORPORATION, THOMAS SERGI, ERNEST HOFFMAN, RODDY HARRINGTON, MICHEAL ANTONACCIO, defendants: Joy D. Oberman, New York, NY.

For DENNIS LE DUC, defendant: Amy S. Young, New York, NY.

**Judges:** Richard Conway Casey, U.S.D.J.

**Opinion by:** Richard Conway Casey

## Opinion

Opinion and Order

Richard Conway Casey, U.S.D.J.

Plaintiff, Marie Monastra, initiated this action in New York State Supreme Court, against her former employer, NYNEX Corporation ("NYNEX"), and five individual defendants, alleging employment discrimination, wrongful termination in breach of a collective bargaining agreement and outrageous and malicious treatment. Plaintiff asserts that she was involved in an incident where another NYNEX employee threatened her, and that as a result of this incident she became physically and mentally ill. She further contends that despite her requests for assistance, NYNEX and the individual defendants failed to address the situation, [*2] further contributing to her emotional distress. Plaintiff brought this action against the defendants for: i) failure to provide her with a medically justified leave of absence; ii) failure to accommodate her with a transfer to a different and safer location; iii) failure to take corrective action against the employee who threatened her; and iv) wrongfully terminating her in violation of the collective bargaining agreement between NYNEX and her union.

NYNEX removed the action to the United States District Court for the Southern District of New York and plaintiff has now moved to remand the action to state court. One of the individual defendants, Dennis Le Duc, has moved for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), dismissing the action against him. For the reasons set forth below, plaintiff's motion to remand is denied and defendant Le Duc's motion to dismiss the action as against him is granted.

## I. BACKGROUND

2000 U.S. Dist. LEXIS 13142, *2

Plaintiff commenced her employment with NYNEX on May 20, 1980 as a directory assistance operator. During her employment, plaintiff was a member of District One of the AFL-CIO Communications Workers of America Union, also known as CWA [*3] Local 1101 ("Local 1101"). NYNEX and Local 1101 maintain a collective bargaining agreement (the "Agreement") which governs the terms and conditions of employment for Local 1101 members. Section 10.01(1) of the Agreement specifically provides that:

> if an employee is to be discharged, he shall first be suspended for ten (10) calendar days. The Local Union shall be notified in writing immediately that the employee has been suspended prior to discharge. During the ten (10) day period, the Local Union may discuss the reasons for NYNEX's action with the appropriate district level supervisor (or his alternate) and may protest the action.

(Affidavit of Joy D. Oberman, Exh. B.)

In or about May of 1996, plaintiff was employed as a Construction Coordinator at the NYNEX Garage, located at 2300 Randall Avenue, Bronx, New York (the "Randall Avenue facility"). As a Construction Coordinator, plaintiff's duties were primarily office related, involving the maintenance of employee time sheets and inventory records and other administrative tasks. On or about July 28, 1996, plaintiff alleges that she was threatened by a male co-worker, Gerard Job. While the two were alone in the kitchen [*4] area, Job allegedly prevented plaintiff from leaving the kitchen and threatened her over rumors that she had informed someone that Job and another employee, Ruben Garcia, were stealing from the Randall Avenue facility. (Complaint at p. 4, PP 25-29.) Despite plaintiff's denial of the rumors, Job repeatedly told plaintiff that he "better not hear anything else or else!" (*Id.* at p. 4, PP 26, 29.) Plaintiff, upset and concerned for her safety, left work for the day immediately thereafter.

Plaintiff maintains that she was in fear for her life and therefore, relayed the incident to Roy Sokolov,

a retired NYNEX foreman, and to Pamela Jones, the director of the NYNEX Employee Assistance Program. The next day, on or about July 29, 1996, plaintiff further reported the incident to defendant Thomas Sergi, a former management-level NYNEX employee. Plaintiff alleges that Sergi informed her that he would "personally take care of the Job incident" and later directed her not to take further action. (Complaint at p. 6, P 39.) Plaintiff also made follow-up requests to NYNEX management, requesting that the incident with Job be written up. Subsequently, plaintiff received indirect threats from Garcia [*5] as well.

Discouraged that NYNEX had not addressed the matter to her satisfaction, on or about November 13, 1996, plaintiff reported the incident to defendant Ernest Hoffman, Sergi's superior at the time. Then on November 14, 1996, plaintiff met with Sergi, defendant Roddy Harrington, a NYNEX control foreman, a third NYNEX employee and defendant Dennis Le Duc, a Local 1101 business agent, to discuss the incident. Plaintiff contends that the meeting was merely a pretense and that the atmosphere and tenor of the meeting only made her more fearful for her situation. She asserts that she was told not to discuss the incident with anyone else and informed by Le Duc "that they [didn't] like the idea of her telling anyone what goes on in the office area." (Complaint at pp. 8-9, PP 62-66.) Plaintiff subsequently contacted a confidential NYNEX hotline to report her situation. On or about November 22, 1996, she spoke with Kevin Houston of NYNEX Security regarding the Job incident. Plaintiff avers that she later applied for different positions within NYNEX, in order to transfer out from the Randall Avenue facility. Job has denied ever threatening plaintiff and NYNEX has not taken any disciplinary [*6] action against him.

After initially informing Sergi of the incident with Job, plaintiff became physically and emotionally ill. Thereafter, she sought medical treatment from both a psychiatrist, Dr. Grant Mitchell, and a psychotherapist and social worker, Laurie Orfe, on a continuing basis. (Complaint at p. 6, P 46.)

Plaintiff asserts that her condition worsened and was exacerbated by the failure of NYNEX and the individual defendants to resolve this matter concerning the Job incident. Eventually, due to her medical and emotional condition, plaintiff contends that she was unable to immediately return to work. Plaintiff further asserts that Dr. Mitchell and Ms. Orfe notified NYNEX that she had ben diagnosed with severe depression, anxiety and panic, and that she would require time off from work. (*Id.* at p. 10, P 90.) By letter dated December 7, 1996, NYNEX notified plaintiff that she would have to provide medical justification for her absence from work. (*Id.* at p. 10, P 92.)

In or about late December of 1996, at Le Duc's direction, plaintiff reported for work at the NYNEX facility located at 500 Zerega Avenue, Bronx, New York (the "Zerega Avenue facility"). Plaintiff alleges [*7] that the foreman of the Zerega Avenue facility, defendant Michael Antonacci, informed plaintiff that she was to return to the Randall Avenue facility. (Complaint at p. 10, P 95.) Upon informing Le Duc of this development, he advised her to return home and that he would find her another location to work.

By letter dated January 2, 1997, Harrington informed plaintiff that if she did not return to work by January 9, 1997, she would be separated from the payroll. Plaintiff contends that Dr. Mitchell forwarded to NYNEX the requisite medical information for her to obtain sick leave. Plaintiff then spoke with Barbara Biggs-Glover, a chief steward for Local 1101, who advised her that Harrington had refused to accept plaintiff's sick leave status and further advised plaintiff to return work. Plaintiff avers that she returned to work at the Randall Avenue facility on or about January 15, 1997, and that Harrington advised her to go home because she did not have the requisite medical approval to return to work. (Complaint at p. 12, PP 107-08.) Prior to that date, plaintiff had never been informed that she was required to submit medical approval to Harrington in order to return to work.

Plaintiff [*8] asserts that she was placed on absence without leave status on January 15, 1997. (Complaint at p. 12, P 111.) On or about January of 1997, plaintiff received a letter from COBRASERV, notifying her that she had been terminated from NYNEX and that she needed to elect whether or not to continue her health benefits.

Plaintiff initiated this action on June 22, 1999, asserting twelve causes of action against NYNEX, for violations of the New York Human Rights Law (the "Human Rights Law") and the New York City Administrative Code (the "Administrative Code"). She alleges disability discrimination, gender discrimination, breach of the Agreement and outrageous and malicious treatment by NYNEX. Plaintiff's first eight causes of action allege disability discrimination and are summarized as follows: i) plaintiff suffered from a disability as defined by N.Y. Exec. Law § 292(21) and New York City Administrative Code § 8-102(16)(a), and NYNEX refused to grant her request for a leave of absence in violation of N.Y. Exec. Law § 296(1)(a) and New York City Administrative Code § 8-107(1)(a); ii) NYNEX failed to reasonably accommodate her by transferring plaintiff to a safer location in violation of [*9] N.Y. Exec. Law § 296(3)(a) and New York City Administrative Code § 8-107(1)(a); iii) NYNEX refused to accept medical documentation supporting her leave of absence and eventually terminated her in violation of N.Y. Exec. Law § 296(1)(a) and New York City Administrative Code § 8-107(1)(a); and iv) NYNEX wrongfully terminated plaintiff in retaliation for opposing unlawful discriminatory practices and in violation of N.Y. Exec. Law § 296(3)(c) and New York City Administrative Code § 8-107(7). The ninth and tenth causes of action allege gender discrimination, because NYNEX failed to take corrective action against Job, Garcia and Brignoni [1] in violation of N.Y. Exec. Law § 296(1)(a) and New York City Administrative Code § 8-107(1)(a). The eleventh cause of action alleges

---

[1] This is the only mention of an individual named Brignoni in plaintiff's complaint.

that NYNEX breached the Agreement because NYNEX failed to suspend her ten days prior to termination, failed to notify Local 1101 that she had been suspended or would be discharged and failed to notify her that she had, in fact, been terminated. Plaintiff's final cause of action alleges that NYNEX's treatment of plaintiff was outrageous, malicious and done with reckless indifference toward plaintiff, in violation [*10] of the New York City Administrative Code.

On July 15, 1999, NYNEX removed the action to the United States District Court for the Southern District of New York, on the basis of the Court's original jurisdiction under Section 301 of the Labor Management Relations Act of 1947 (the "Labor Relations Act") and 28 U.S.C. §§ 1331, 1337. Plaintiff has moved to remand this action to the New York State Supreme Court, arguing that this Court lacks subject matter jurisdiction. In addition, defendant Le Duc has moved for judgment on the pleadings, dismissing the action as against him for failure to allege a legally sufficient claim of discrimination.

## II. DISCUSSION

### A. MOTION TO REMAND

#### 1. Preemption by Section 301 of the Labor Relations Act

Plaintiff contends that all of the causes of action here are either state or local in nature and therefore, the Court lacks subject matter jurisdiction and should [*11] remand this action to state court. With regard to the eleventh cause of action, asserting breach of the Agreement, plaintiff argues that the Labor Relations Act is inapplicable here because the controversy is between an employer and a single employee and not between an employer and an entire labor organization. Plaintiff also argues that because she has not pled a violation of the Labor Relations Act in the complaint, it should not be controlling here.

A defendant may remove any civil action commenced in state court to the United States District Court where the federal court maintains original jurisdiction. 28 U.S.C. § 1441(1994). Under Section 301 of the Labor Relations Act ("Section 301"), the Court maintains jurisdiction over causes of action based on violations of collective bargaining agreements. *McKee v. Transco Prods., Inc.*, 874 F.2d 83, 85 (2d Cir. 1989). Specifically, Section 301 provides that:

> suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district [*12] court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C.A. § 185(a) (1998). Therefore, Section 301 governs claims based upon rights created by a collective bargaining agreement and any claims "'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987) (quoting *Int'l Brotherhood of Elec. Workers v. Hechler*, 481 U.S. 851, 859, n. 3, 107 S. Ct. 2161, 95 L. Ed. 2d 791 (1987)); *see McKee*, 874 F.2d at 85. Although plaintiff has not pled this as a federal cause of action in the complaint, the "complete preemption" doctrine dictates that where "the preemptive force of a statute is so extraordinary [] it converts an ordinary state common-law complaint into one stating a federal claim." *Caterpillar*, 482 U.S. at 393 (citations and quotation marks omitted); *see also Wilk v. Intercontinental Hotel*, 1994 U.S. Dist. LEXIS 658, 1994 WL 25807 at *2 (S.D.N.Y. Jan. 28, 1994) (holding that section [*13] 301 converts common law breach of contract claim into federal cause of action where contract is collective bargaining agreement). This "complete preemption" doctrine primarily applies to claims under Section 301. *See Caterpillar*, 482 U.S. at

393; *Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35, 38 (2d Cir. 1997). Plaintiff, therefore, cannot elude federal jurisdiction over this claim by fashioning it as a state law claim. Here, plaintiff has not alleged any violation of a specific state law. Instead, she merely eschews any reference to federal jurisdiction and frames the cause of action as common law breach of contract. Plaintiff has failed to even cite any case law in support of her position. Nevertheless, because the violation alleged requires the Court to review and interpret the Agreement in order to determine whether it has been breached, Section 301 governs. *See Lingle v. Norge Division of Magic Chef*, 486 U.S. 399, 413, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988); *Foy v. Pratt & Whitney Group*, 127 F.3d 229, 233 (2d Cir. 1997).

In addition, plaintiff's argument that this action is beyond the scope of Section 301 [*14] because it is a controversy between an individual employee and an employer, and not a controversy between an employer and an entire labor organization, is unavailing. In fact, Section 301 has been held to be controlling in this exact situation. *See Smith v. Evening News Assoc.*, 371 U.S. 195, 200-01, 83 S. Ct. 267, 9 L. Ed. 2d 246 (1962); *Dougherty v. American Tel. and Tel. Co.*, 902 F.2d 201, 203 (2d Cir. 1990); *McKee*, 874 F.2d at 85. Accordingly, because the Court maintains jurisdiction over this cause of action, removal was proper in this instance and plaintiff's motion to remand is denied.

2. ERISA Preemption

Although plaintiff makes no further arguments in support of the motion to remand, NYNEX further contends that the Court maintains jurisdiction over plaintiff's causes of action for denial of medical leave and benefits based on ERISA preemption. NYNEX removed this action on the basis of preemption by Section 301 and only now advances its ERISA preemption argument in opposing the motion to remand. (Notice of Removal, PP 3-7.) Furthermore, plaintiff has not even addressed this particular issue. Therefore, having

determined [*15] that removal was proper on the basis of preemption by Section 301, the Court declines to address whether ERISA preemption exists here, for purposes of determining the motion to remand.

## B. DEFENDANT LE DUC'S MOTION FOR JUDGMENT ON THE PLEADINGS

### 1. Le Duc as an "Employer"

Defendant Le Duc, a business agent of Local 1101, contends that this action should be dismissed as against him because he does not hold a management position with NYNEX. He argues, therefore, that he is not an employer as defined by either the Labor Relations Act or the Human Rights Law. Le Duc asserts that because plaintiff's causes of action allege discrimination by her employer, NYNEX, and individual NYNEX employees, he is not a proper defendant in this action.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(c), the Court applies the same standard as it would under a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. denied*, 513 U.S. 816, 130 L. Ed. 2d 28, 115 S. Ct. 73 (1994); *Heartland Sec. Corp. v. Gerstenblatt*, 2000 U.S. Dist. LEXIS 3496, 2000 WL 303274 at *4 (S.D.N.Y. Mar. 22, 2000). [*16] Accordingly, the Court "accept[s] the allegations contained in the complaint as true, and draw[s] all reasonable inferences in favor of the non-movant; [and will] not dismiss the complaint 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" *Sheppard*, 18 F.3d at 150 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)) (internal quotations omitted); *see Fitzgerald v. Field*, 1998 U.S. Dist. LEXIS 4205, 1998 WL 152575 at *2 (S.D.N.Y. Apr. 1, 1998).

The Court notes that plaintiff undercuts her argument in support of the motion to remand, by now relying upon the Labor Relations Act to

support her claims against Le Duc. Plaintiff cannot selectively apply the Labor Relations Act to suit her purposes; opting to renounce its application in hopes of remanding this action and then relying upon it to oppose the motion to dismiss. Plaintiff's causes of action all allege violations of the Human Rights Law or the Administrative Code, with the exception of the eleventh cause of action, which the Court has determined is governed by the Labor Relations [*17] Act. The Court now will address plaintiff's claim that the Labor Relations Act controls whether Le Duc is an employer, only with respect to that particular cause of action. The remaining claims are governed by the Human Relations Law.

The Labor Relations Act defines an "employer" as "any person acting as an agent of an employer, directly or indirectly." 29 U.S.C.A. § 152(2) (1998). However, the Labor Relations Act further provides that "anyone acting in the capacity of officer or agent of [a] labor organization" is not included in the definition of "employer." Id. Notwithstanding the clear language of the statute, plaintiff argues that Le Duc "so aligned himself with management as to become a part thereof." (Plaintiff's Memo in Opposition at p. 3.) Hence, she argues that Le Duc is an employer as defined by the Labor Relations Act and not exempt from liability.

It is undisputed that Le Duc is a business agent of plaintiff's union, Local 1101, and not an employee of NYNEX. Plaintiff only contends that Le Duc is a de facto employee of NYNEX by virtue of his conduct. She never claims that he was actually an employee of NYNEX and there is nothing in the record [*18] to indicate that an employee-employer relationship existed between Le Duc and NYNEX. This fact alone, takes Le Duc outside of the definition of an employer under the Labor Relations Act. However, because plaintiff is entitled to all reasonable inferences in her favor, the Court will extend its analysis beyond the precise language of the statute. In actions arising under the Labor Relations Act, an employer-employee relationship exists where the "'purported employer

controls or has the right to control both the result to be accomplished, and the manner and means by which the purported employee brings about the result.'" *Chaiken v. VW Pub. Corp.*, 119 F.3d 1018, 1034 (2d Cir. 1997), *cert. denied*, 522 U.S. 1149, 140 L. Ed. 2d 179, 118 S. Ct. 1169 (1998) (quoting *Hilton Int'l Co. v. NLRB*, 690 F.2d 318, 320 (2d Cir. 1982)); *see Momen v. United States of America*, 946 F. Supp. 196, 202 (N.D.N.Y. 1996); *see also NLRB v. E.C. Atkins & Co.*, 331 U.S. 398, 413-14, 67 S. Ct. 1265, 91 L. Ed. 1563 (1947) (holding that employer-employee relationship is determined by power to set wages and hours, coupled with the financial [*19] burden of the wages and receipt of the benefits of the work, as well as the absolute power to hire and fire or the power to control all the activities of the worker); *District 2 Marine Eng'rs Beneficial Ass'n v. Grand Bassa Tankers, Inc.*, 1980 U.S. Dist. LEXIS 9698, 1980 WL 2187 at *5 (E.D.N.Y. Nov. 4, 1980) (quoting *E.C. Atkins*, 331 U.S. at 413-14). Here, plaintiff has failed to allege that Le Duc possessed any indicia of control over the objective, manner and means of her employment. Plaintiff also fails to assert any facts to support her claim that Le Duc acted as a de facto member of NYNEX management. The only fact that could possibly lead to an inference that Le Duc maintained any control over plaintiff, is Le Duc's directing her to report to the Zerega Avenue facility. (Complaint at p. 10, PP 93-94.) However, this can only be construed as Le Duc assisting plaintiff, as he found her an alternative work location to the Randall Avenue facility, the situs of the threats underlying this action. On its face, this conduct alone fails to demonstrate that Le Duc possessed any control over the incidents of plaintiff's employment. Moreover, Le Duc's actions here rebut plaintiff's [*20] allegation that Le Duc acted in concert with management to discriminate against her. On the contrary, it serves to bolster Le Duc's position that he is a business agent of Local 1101 and not an employer. The remaining assertions concerning Le Duc's conduct do not implicate the issue of control over plaintiff's incidents of

employment. Therefore, plaintiff's bald assertions that Le Duc is an employer under the Labor Relations Act are insufficient to survive a motion to dismiss. *Tarshis v. The Riese Org.*, 211 F.3d 30, 35 (2d Cir. 2000); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Le Duc also does not qualify as an employer under the Human Rights Law. The determination of whether a party is an employer under the Human Rights Law, turns on whether the purported employer: i) has the power of selecting and engaging the employee; ii) makes payment of salary or wages to the employee; iii) has the power of dismissal over the employee; and iv) has the power to control the employee's conduct. *See Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998) (citing *Goyette v. DCA Adver., Inc.*, 830 F. Supp. 737, 746 (S.D.N.Y. 1993)); [*21] *Robins v. Max Mara, U.S.A., Inc.*, 923 F. Supp. 460, 470 (S.D.N.Y. 1996); *State Div. Of Human Rights v. GTE Corp.*, 109 A.D.2d 1082, 487 N.Y.S.2d 234, 235 (4th Dep't 1985). Of these factors, whether the purported employer "exercised control over the employee's conduct and the incidents of [her] employment," is the crucial inquiry. *Pampillonia*, 138 F.3d at 461; *see Robins*, 923 F. Supp. at 470 (quoting *Alie v. NYNEX Corp.*, 158 F.R.D. 239, 246 (E.D.N.Y.1994)); *see also In re Villa Maria Inst. of Music v. Ross*, 54 N.Y.2d 691, 442 N.Y.S.2d 972, 973, 426 N.E.2d 466 (1981) (holding that court looks to degree of control and direction reserved to employer, in determining existence of employment relationship). Again, plaintiff here has failed to even allege that Le Duc exerted any such control over her employment. Further, there is nothing in the complaint to suggest that Le Duc possessed control over the conditions of plaintiff's employment, much less exerted such control. As previously discussed, the only conduct demonstrating that Le Duc exercised any influence over plaintiff, [2] only

bolsters [*22] Le Duc's position as a union representative. Despite drawing all reasonable inferences in plaintiff's favor, Le Duc is not an employer as defined by the Labor Relations Act or the Human Rights Law. Therefore, Le Duc cannot be held individually liable as an employer and those claims against him are dismissed.

## 2. Le Duc as an Aider and/or Abetter

Plaintiff also alleges that Le Duc is individually liable for NYNEX's discriminatory conduct under the Human Rights Law. The Human Rights Law provides for individual liability where a person "aid[s], abet[s], incite[s], compel[s] or coerce[s] the doing of any of the acts forbidden" by the Human Rights Law. N.Y. Exec. Law § 292(6). Thus, in order to hold Le Duc personally liable as an aider or abetter, plaintiff must establish that he "actually participated in the conduct giving rise to a discrimination claim. [*23] " *Tomka v. Seiler*, 66 F.3d 1295, 1317 (2d Cir. 1995); *see Shepard v. Frontier Communications Servs., Inc.*, 92 F. Supp. 2d 279, 287 (S.D.N.Y. 2000); *Oliver v. General Nutrition Ctr.*, 1999 U.S. Dist. LEXIS 9571, 1999 WL 435208 at *3 (S.D.N.Y. Jun. 25, 1999). Plaintiff, however, has failed to assert any facts indicating that Le Duc did participate in the alleged discriminatory conduct of NYNEX and the other individual defendants. For instance, she contends that Le Duc: i) "stood idly by while job-related threats were improperly handled;" ii) failed to "assist her in attaining support for her medical leave of absence;" and iii) "remained silent in the face of these contractual breaches;" (Plaintiff's Memo in Opposition at p. 4.) Yet these allegations are wholly unsubstantiated by any facts in the complaint. The Court cannot extrapolate a set of reasonable inferences in favor of plaintiff without sufficient factual allegations from which to draw these inferences. *See Tarshis*, 211 F.3d at 35; *Leeds*, 85 F.3d at 53.

The only examples of Le Duc's purported participation that plaintiff does cite are: i) his presence, "without comment [*24] or

---

[2] Le Duc directed plaintiff to report to the Zerega Avenue facility, instead of the Randall Avenue facility. (Complaint at p. 10, PP 93-94.)

intervention," at the November 14, 1999 meeting (Plaintiff's Memo in Opposition at p. 3); ii) "ordering" [3] plaintiff to return to work at the Zerega Avenue facility; and iii) informing plaintiff that he would find her another work location (*id.* at p. 4). Without more, this conduct simply does not demonstrate that Le Duc participated in the alleged discriminatory conduct in any manner. *See Nodelman v. Gruner & Jahr USA Publ'g*, 2000 U.S. Dist. LEXIS 5398, 2000 WL 502858 at *12 (S.D.N.Y. Apr. 26, 2000) (holding that employee may be individually liable under Human Rights Law if he "directly and purposefully participated in the charged discrimination"); *Cerrato v. Durham*, 941 F. Supp. 388, 396 (S.D.N.Y. 1996) (holding that informing plaintiff that she had been terminated was not akin to "direct [and] purposeful participation" for which courts have held individuals liable as aiders and abettors). The Court finds it particularly telling that plaintiff claims that Le Duc "actively interfered with plaintiff's medical leave . . . and refrained from relocating her to a location free of threats" (Plaintiff's Memo in Opposition at p. 4), when in fact, he did relocate her to an alternative [*25] work location as requested. This cannot be interpreted as the act of one who aided and abetted the alleged discriminatory conduct against plaintiff. Because the pleadings are devoid of sufficient evidence to support the claims against Le Duc as an aider or abetter, those claims are dismissed.

## III. CONCLUSION

For the foregoing reasons, plaintiff's motion to remand is denied and defendant Le Duc's motion for judgment on the pleadings, dismissing the case as against him, is granted.

**Dated: September 8, 2000**

---

[3] Although plaintiff avers that Le Duc had "directed" her to report to the Zerega Avenue facility in the complaint, she rephrases it as Le Duc having "ordered" her to report there in the Memo in Opposition to the motion to dismiss.

**New York, New York**

**SO ORDERED:**

**Richard Conway Casey, U.S.D.J.**

---

End of Document