UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MARCUS ANDRE DODD,                                            :
               Plaintiff,                                   :
                                                             :
v.                                                            :
                                                             :
MY SISTERS' PLACE, INC.; KAREN                                :
CHEEKS-LOMAX, Individually; THOMAS                            :
RICE, Individually; ROBERT R.                                 :
GHEEWALLA, Individually; SUZANNE                              :  **OPINION AND ORDER**
SEIDEN, Individually; BARBARA RAHO,                           :
Individually; EVAN J. COHEN, Individually;                    :  21 CV 10987 (VB)
LINDA PURVIS, Individually; HILARY                            :
TUOHY, Individually; CHERYL                                   :
GREENBERG, Individually; PETER CUTAIA,                        :
Individually; MARIA FAUSTINO,                                 :
Individually; DANIA JONES-BROWN,                              :
Individually; and CHRISTINA DEBONIS,                          :
Individually,                                                 :
               Defendants.                                  :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Marcus Andre Dodd, proceeding pro se and in forma pauperis, brings this employment discrimination action under Title VII of the Civil Rights Act of 1964 ("Title VII"), Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), the Americans with Disabilities Act of 1990 ("ADA"), and the New York State Human Rights Law ("NYSHRL"). Plaintiff claims defendants My Sisters' Place, Inc. ("MSP"), MSP's Chief Executive Officer Karen Cheeks-Lomax, and Thomas Rice, co-chair of MSP's Board of Directors (the "Board"), unlawfully discriminated against him when he was MSP's Chief Financial Officer ("CFO") and terminated him in retaliation for complaining about such discrimination. He also contends defendants Robert R. Gheewalla, Suzanne Seiden, Barbara Raho, and Linda Purvis (the "Board Defendants") participated in the unlawful discrimination and retaliation.

Now pending is a motion to dismiss the claims against defendants Gheewalla, Seiden, Raho, Purvis, Evan J. Cohen, Cheryl Greenberg, Peter Cutaia, Maria Faustino, Dania Jones-Brown, and Christina Debonis (the "Moving Defendants"), pursuant to Rule 12(b)(6).[1]  (Doc. #47).  Defendants MSP, Cheeks-Lomax, and Thomas Rice have filed an answer with counterclaims (Doc. #46) and do not join in the motion to dismiss.  Nor does defendant Hilary Tuohy, who has not yet been served.

Also pending is plaintiff's cross-motion for leave to amend his complaint, which plaintiff asserted in his opposition.  (Pl. Opp. at 7).

For the following reasons, the motion to dismiss is GRANTED IN PART and DENIED IN PART, and plaintiff's cross-motion for leave to amend is DENIED WITHOUT PREJUDICE.

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.  Because plaintiff is proceeding pro se, the Court also considers allegations made for the first time in plaintiff's opposition to the motion.  See, e.g., Vlad-Berindan v. MTA N.Y.C. Transit, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014).

I.   Plaintiff's Employment at MSP

From November 2020 to July 2021, plaintiff, an African American man, was employed

---

[1]   Plaintiff initially asserted discrimination and retaliation claims under Section 1981 and the NYSHRL against all defendants.  However, he has dropped all claims against defendants Cohen, Greenberg, Cutaia, Faustino, Jones-Brown, and Debonis (Doc. #55 ("Pl. Opp.") at 2), as well as his NYSHRL discrimination claims against the Board Defendants.  (Id. at 4 n.2).  Accordingly, the Court addresses only plaintiff's claims against the Board Defendants for discrimination under Section 1981 and retaliation under Section 1981 and the NYSHRL.

as the CFO at MSP, a not-for-profit corporation headquartered in White Plains, New York, whose mission is to provide services to victims of domestic violence and human trafficking.  As CFO, plaintiff allegedly reported to the Board's Finance Committee, which included defendants Gheewalla, Raho, Purvis, and Rice.  Rice and defendant Seiden are co-chairs of the Board.  In addition, defendant Tuohy served as a Board member until she resigned due allegedly to "race-related concerns."  (Doc. #37 ("Am. Compl.") ¶ 184).

II.     Alleged Discrimination

Around January 2021, plaintiff led his first Finance Committee meeting, during which Rice allegedly "question[ed] Plaintiff unnecessarily and challeng[ed] many of Plaintiff's statements without reason."  (Am. Compl. ¶ 44).  Plaintiff alleges Cheeks-Lomax, who is also African American, told him Rice did this because plaintiff "was not Betsy, the white woman CFO" who preceded him.  (Id. ¶ 46).  Plaintiff further alleges Cheeks-Lomax told him "she had endured race-based harassment from multiple members of the Board," including Rice.  (Id. ¶ 40).

According to the amended complaint, plaintiff complained to Cheeks-Lomax nearly weekly about Rice's behavior, including Rice's efforts to "derail[ ] the budget process by unfairly questioning" plaintiff via email before a Finance Committee meeting.  (Am. Compl. ¶ 67).  In addition, during a May 2021 meeting with Cheeks-Lomax and MSP's Chief Program Officer plaintiff described "a few of the forms of unfair scrutiny and disrespect" to which Rice subjected him.  (Id. ¶ 57).  Plaintiff further alleges Tuohy complained to Cheeks-Lomax about MSP's handling of race-related matters, including its anti-racism training, and consequently resigned from the Board.  Rice, Seiden, Gheewalla, Raho, and Purvis also allegedly complained to Cheeks-Lomax about the training.

However, MSP allegedly failed to address discrimination and did not investigate Rice's conduct until June 2021.  On June 1, 2021, plaintiff emailed Cheeks-Lomax and her executive assistant, complaining about the ongoing discrimination.  Two days later, plaintiff received an email from Tracey Levy, an independent investigator retained by MSP to look into his allegations.

Around June 2, 2021, plaintiff was allegedly diagnosed with high blood pressure and costochondritis, and, on doctor's orders, did not return to work until June 14, 2021.  On the evening of June 14, he developed heart palpitations shortly after receiving an email from Cheeks-Lomax indicating she and the Finance Committee were concerned about the delay in the budget process resulting from plaintiff's absence.  The next day, a cardiologist ordered plaintiff not to return to work until July 6, 2021.  The Finance Committee extended the budget deadline from June 23 to July 27, 2021, to enable plaintiff to participate in the process.

On July 13, 2021, plaintiff met with Levy to discuss his June 1 complaint.  Levy was allegedly surprised to learn plaintiff had discussed Rice's behavior with Cheeks-Lomax before June 1.  After the meeting, plaintiff sent Levy copies of emails from Rice and Cheeks-Lomax and a summary of the complaints he wanted her to investigate.

The same day, plaintiff allegedly met with MSP's controller, defendant Cutaia, to prepare for a July 15 Finance Committee meeting, including by reviewing transactions related to consultants hired through the Upwork agency.  Over the next week, MSP's billing manager, defendant Faustino, asked plaintiff for details about work performed by Upwork consultant Matinah Drew.  Plaintiff could only give her invoices showing the number of hours Drew worked.  According to plaintiff, because Drew complied with Upwork's requirements, he did not ask her to maintain detailed accounts of her work.

On July 19, 2021, plaintiff allegedly met again with Levy, who said her investigation revealed "no basis for racial discrimination" by Rice. (Am. Compl. ¶ 136). After speaking to "a variety of people" and considering "various documentation," Levy concluded Rice "questioned everyone." (Id. ¶¶ 137–38). When plaintiff expressed concerns about potential retaliation, Levy said he should contact Cheeks-Lomax or Gheewalla if he was subject to any retaliatory acts.

III. Plaintiff's Termination

Plaintiff alleges on July 20, 2021, during a meeting attended only by Cheeks-Lomax, Gheewalla, and plaintiff, Cheeks-Lomax "abruptly informed [him] that he was terminated effective immediately" for spending company funds on two Upwork consultants for personal purposes. (Am. Compl. ¶ 147). Cheeks-Lomax and Gheewalla said they had acquired evidence of the purported misconduct, although they did not previously ask plaintiff about it. Plaintiff allegedly told Cheeks-Lomax and Gheewalla he used the consultants for legitimate business purposes—they updated his resume and LinkedIn profiles for his application to speak at a conference sponsored by one of MSP's largest funders, and engaging with funders was an important part of his job—but Cheeks-Lomax told him "You are still terminated" and ended the meeting. (Id. ¶ 157). This immediate termination, without prior warnings or discipline, allegedly deviated from MSP's typical progressive discipline model.

At some point, Cheeks-Lomax allegedly retained AlixPartners to investigate plaintiff "to try to find and create evidence" to "later . . . cover-up the retaliatory termination." (Am. Compl. ¶ 82).[2] Rice, Seiden, Raho, and Purvis approved the retention of AlixPartners.

---

[2]   Plaintiff does not specify when AlixPartners was retained. Defendants contend MSP engaged AlixPartners only after terminating plaintiff, and attach a copy of an executed agreement between MSP and AlixPartners, dated August 5, 2021. (Doc. #48-1). However, in deciding the instant motion, the Court cannot consider this document because plaintiff did not attach it to the complaint, incorporate it by reference, or "rel[y] heavily on upon its terms and

5

IV.     Procedural Background

On October 25, 2021, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  He received a Notice of Right to Sue from the EEOC on December 2, 2021.

Plaintiff initiated this action on December 21, 2021.  (Doc. #2).  On April 27, 2022, after most of the defendants moved to dismiss, plaintiff filed an amended complaint naming two additional defendants, Purvis and Tuohy.  Thereafter, the Moving Defendants filed the instant motion.

## DISCUSSION

I.      Rule 12(b)(6) Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[3]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

---

effect."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).  Moreover, it is not "clear on the record that no dispute exists" regarding the document's authenticity, accuracy, or relevance.  Id.

[3]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

6

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

Because plaintiff is proceeding pro se, the Court must construe his submissions liberally and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). That said, "a pro se plaintiff's factual allegations must at least be enough to raise a right to relief above the speculative level." Karupaiyan v. CVS Health Corp., 2021 WL 4341132, at *6 (S.D.N.Y. Sept. 23, 2021). Even in the pro se context, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

II.     Discrimination Claims Against the Board Defendants

The Board Defendants argue plaintiff's Section 1981 discrimination claims against them must be dismissed because plaintiff has not plausibly alleged they were personally involved in discriminatory conduct.

The Court agrees.

A.     Legal Standard

Section 1981 provides a cause of action for employment discrimination based upon disparate treatment or a hostile work environment. Littlejohn v. City of New York, 795 F.3d 297, 312, 320 (2d Cir. 2015).

To state a claim for disparate treatment, a plaintiff must plausibly allege he suffered an adverse employment action and his employer would not have taken adverse action against him "but for [his] race." Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020). Accordingly, a plaintiff must allege facts from which the Court can infer an intent to discriminate on the basis of race. See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam). An inference of discrimination can arise from circumstances including "the employer's criticism of the plaintiff's performance in ethnically degrading terms[,] invidious comments about others in the employee's protected group[,] more favorable treatment of employees not in the protected group[,] or the sequence of events leading to the" alleged adverse action. Littlejohn v. City of New York, 795 F.3d at 312.

To state a claim for a hostile work environment, a plaintiff must plausibly allege "the complained of conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected status]." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007). "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014).

To state a claim against an individual under Section 1981, a plaintiff must allege facts that plausibly "demonstrate some affirmative link to causally connect the actor with the" disparate treatment or hostile work environment. See Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 75 (2d Cir. 2000). The individual defendant must be personally involved in the discriminatory conduct. Id. Personal involvement "includes not only direct participation in the alleged violation but also gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that [Section 1981] violations are occurring." Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 229 (2d Cir. 2004).

B.      Application

Here, plaintiff fails to state discrimination claims against the Board Defendants because he fails plausibly to allege they were personally involved in discriminatory conduct.

Plaintiff does not allege the Board Defendants treated him differently because of his race or made any discriminatory comments to him.[4] Rather, his assertions, whether construed to claim disparate treatment or a hostile work environment, center on Rice's discriminatory and "harsh treatment" of plaintiff. (Pl. Opp. at 3). Even liberally construed, plaintiff's conclusory allegations that the Board Defendants had "the authority to affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision-making regarding same" (Am. Compl. ¶¶ 12, 15, 18, 23) do not provide the "affirmative link" necessary to support claims for individual liability. Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d at 75.

---

[4] Plaintiff alleges Cheeks-Lomax told him several Board members subjected her to race-based harassment, and the Board Defendants complained to Cheeks-Lomax about the anti-racism training. However, conduct that was not personally experienced by or directed at plaintiff does not establish that he was subjected to a hostile work environment. See Dabney v. Christmas Tree Shops, 958 F. Supp. 2d 439, 459 (S.D.N.Y. 2013), aff'd sub nom. Dabney v. Bed Bath & Beyond, 588 F. App'x 15 (2d Cir. 2014).

9

Nor do plaintiff's allegations create a plausible inference the Board Defendants were grossly negligent or failed to act after learning about discriminatory conduct. Plaintiff alleges, in a conclusory fashion, the Board Defendants "failed to address or respond to the multiple instances of racial discrimination raised by Plaintiff . . . between January 2021 and July 2021." (Am. Compl. ¶¶ 174, 178, 179, 181). However, plaintiff does not plausibly allege the Board Defendants learned about the alleged discrimination at any point before plaintiff sent the June 1 email to Cheeks-Lomax and her executive assistant. Although plaintiff alleges he discussed Rice's conduct with Cheeks-Lomax on several occasions, he does not allege he complained to the Board Defendants. Nor does he allege Cheeks-Lomax shared his complaints with them.

The Court is not persuaded that plaintiff's allegations concerning Rice's behavior at the January 2021 Finance Committee meeting support a plausible inference the Board Defendants were aware of discrimination. (Cf. Pl. Opp. at 3). Even if the Court accepts plaintiff's allegation that Rice acted with discriminatory intent when he questioned plaintiff and challenged his statements, plaintiff does not allege Rice criticized him "in ethnically degrading terms" during the meeting or made comments revealing his discriminatory animus to the Board Defendants. See Littlejohn v. City of New York, 795 F.3d at 312. Indeed, plaintiff alleges Levy concluded Rice "questioned everyone" (Am. Compl. ¶ 137), not only black employees. See Littlejohn v. City of New York, 795 F.3d at 312. And plaintiff does not allege the Board Defendants witnessed Rice's hostile conduct on any other occasion.

Significantly, plaintiff also does not allege the Board Defendants "failed to take any particular action to arrest ongoing" discrimination or that Rice's hostile conduct continued after plaintiff sent the June 1 email. McHenry v. Fox News Network, LLC, 510 F. Supp. 3d 51, 78 (S.D.N.Y. 2020). On the contrary, plaintiff alleges MSP hired a third party, Levy, to investigate

plaintiff's internal complaint within two days of receiving it. This investigation lasted several weeks. Ultimately, after speaking to "a variety of people"—including plaintiff—and reviewing documents, Levy found "no basis for racial discrimination" by Rice. (Am. Compl. ¶ 136). These factual allegations do not plausibly plead the Board Defendants knew plaintiff was being subjected to discrimination but failed to address it.[5] See McHenry v. Fox News Network, LLC, 510 F. Supp. 3d at 78–79.

Accordingly, plaintiff's discrimination claims against the Board Defendants must be dismissed.

## III. Retaliation Claims Against the Board Defendants

The Board Defendants argue plaintiff's Section 1981 and NYSHRL retaliation claims against them must be dismissed because plaintiff does not plausibly allege they were personally involved in his termination or were his employers.

The Court agrees with respect to plaintiff's claims against Seiden, Raho, and Purvis, but not with respect to his claims against Gheewalla.

### A. Legal Standard

To state a retaliation claim under Section 1981 and the NYSHRL, a plaintiff must plausibly plead: "(1) he participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging him; and (3) there exists a causal connection between the protected activity and the adverse action." Patel v. City of New York, 2013 WL 1500432, at *1 (S.D.N.Y. Apr. 10, 2013), aff'd, 699 F. App'x 67 (2d Cir. 2017). "The

---

[5] Even if Gheewalla was aware of Levy's investigation by July 19, 2021, as plaintiff alleges, this allegation does not suggest Gheewalla was previously aware of discrimination and failed to act. (Cf. Pl. Opp. at 3).

term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." Id.

Causation can be shown indirectly by temporal proximity, i.e., "that the protected activity was followed closely by discriminatory treatment." Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000). Although "[t]he Second Circuit has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between a protected activity and an allegedly retaliatory activity, . . . courts have defined ten to twelve months as the outer limit." Stancu v. New York City/Parks Dep't, 2022 WL 4581844, at *7 (S.D.N.Y. Sept. 29, 2022).

As with discrimination, individuals are liable for retaliation under Section 1981 only if they were personally involved in the retaliatory action. See Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d at 75.

Under the NYSHRL, individuals are liable for retaliation only if they are deemed a plaintiff's "employer" or aided and abetted the employer's retaliation. White v. Pacifica Found., 973 F. Supp. 2d 363, 375–77 (S.D.N.Y. 2013). To state a claim against an "employer," a plaintiff must plausibly allege the defendant has "an ownership interest in the relevant organization" or individually has "the power to do more than carry out personnel decisions made by others," such as the power to fire the employee or control his conduct. Id. at 375. To state an aiding and abetting claim, a plaintiff must plead the defendant "actually participated in such unlawful conduct" and "share[d] the intent or purpose of the principal actor." McHenry v. Fox News Network, LLC, 510 F. Supp. 3d at 68.

B.  Application

Although plaintiff alleges MSP terminated him less than two months after he complained about discrimination, he does not plausibly allege the Board Defendants, other than Gheewalla, were personally involved in the alleged retaliatory termination. As such, he fails to state Section 1981 retaliation claims against Seiden, Raho, and Purvis.

Plaintiff's allegations concerning Seiden, Raho, and Purvis are sparse. His allegation that they "approved" or "authorized" the retention of AlixPartners to investigate him (Am. Compl. ¶¶ 83, 175, 182) does not, without more, give rise to the inference that they participated in the alleged retaliation. The amended complaint contains no concrete allegations suggesting Seiden, Raho, and Purvis knew, or should have known, MSP was retaining AlixPartners to cover up an unlawful termination. Nor do plaintiff's general allegations that they had "authority to affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision-making regarding same" (id. ¶¶ 12, 15, 18, 23), or that, as CFO, he "answered directly to the finance committee" (Pl. Opp. at 7), support a plausible inference that Seiden, Raho, and Purvis were personally involved in the alleged retaliation.

However, plaintiff's allegations concerning Gheewalla's involvement in his termination are sufficient to state a Section 1981 retaliation claim. See Patterson v. Cnty. of Oneida, N.Y., 375 F.3d at 229. For example, plaintiff alleges Gheewalla joined Cheeks-Lomax in the July 2021 meeting informing plaintiff of his termination. He further alleges Gheewalla acquired evidence of plaintiff's purported misconduct before the meeting but did not ask if there was a legitimate business purpose for the charges before he "executed the termination." (Am. Compl. ¶ 177).

With respect to plaintiff's NYSHRL retaliation claims, plaintiff has not plausibly alleged

that any of the Board Defendants have an ownership interest in MSP or that any individual board member—as opposed to the Board or the Finance Committee as a whole—had the authority to fire him or control his conduct.  See White v. Pacifica Found., 973 F. Supp. 2d at 375–76.  Accordingly, plaintiff's principal NYSHRL claims against the Board Defendants fail.

Plaintiff has, however, stated a NYSHRL claim against Gheewalla for aiding and abetting MSP's alleged retaliation.[6]  As explained above, plaintiff has plausibly alleged Gheewalla participated in his termination.  In addition, plaintiff has adequately alleged Gheewalla "shared the intent or purpose" of MSP in retaliating against him.  McHenry v. Fox News Network, LLC, 510 F. Supp. 3d at 80.  Plaintiff alleges Gheewalla learned of his complaint before the termination.  He further alleges Gheewalla made negative comments about anti-racism training, and in light of that allegation, it is reasonable to infer Gheewalla was one of the Board members who allegedly subjected Cheeks-Lomax to "race-based harassment."  (Am. Compl. ¶ 40).  Accepted as true, these allegations suggest Gheewalla was hostile to plaintiff because of his complaint and sought to retaliate against him.  See McHenry v. Fox News Network, LLC, 510 F. Supp. 3d at 80; cf. Robles v. Goddard Riverside Cmty. Ctr., 2009 WL 1704627, at *3 (S.D.N.Y. June 17, 2009) ("Plaintiff's allegations regarding the Defendant Board Members proffer neither facts demonstrating any participation by any such defendant in [the] discharge decision nor any facts indicative of any discriminatory motivation in connection with the Board's decision to deny Plaintiff's grievance.").

Accordingly, plaintiff's retaliation claims against Gheewalla shall proceed.  However, his retaliation claims against Seiden, Raho, and Purvis must be dismissed.

---

[6]  Although plaintiff argues the Board defendants are liable under the NYSHRL as "employers," not aiders-and-abettors (Pl. Opp. at 3), the Court interprets the complaint "to raise the strongest arguments" it suggests.  Triestman v. Fed. Bureau of Prisons, 470 F.3d at 474.

14

IV.     Leave to Amend

In his opposition, plaintiff requests leave to amend the complaint to address any deficiencies identified by the Court.  In response, the Board Defendants contend the Court must deny leave to amend as futile because plaintiff has provided no insight into the nature of the proposed amendment.

The Court concludes justice requires denying plaintiff's request without prejudice to filing a motion for leave to amend accompanied by a proposed second amended complaint.

Rule 15 provides that courts "should freely grant leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2).  Leave to amend may be denied for "good reason," such as futility, bad faith, undue delay, or undue prejudice to the opposing party. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200–01 (2d Cir. 2007).  However, the Second Circuit has instructed courts not to dismiss a pro se complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Shabazz v. Bezio, 511 F. App'x 28, 31 (2d Cir. 2013)).

Here, because plaintiff has not submitted a proposed second amended complaint or explained the nature of the proposed amendment, the Court cannot evaluate whether amendment would be futile. See 24 Seven, LLC v. Martinez, 2021 WL 276654, at *11 (S.D.N.Y. Jan. 26, 2021).  However, there is no indication that plaintiff, who is proceeding pro se, made his request in bad faith, and the Court does not see how amendment at this early stage would unduly prejudice the Board Defendants.

For these reasons, and mindful that a pro se litigant "should be afforded every reasonable opportunity to demonstrate that he has a valid claim," Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000), the Court will permit plaintiff to file a motion for leave to amend, provided that such

motion is accompanied by a proposed second amended complaint. To be clear, the Court is permitting plaintiff to move for leave to amend; that does not mean leave to amend will be granted.

Plaintiff may <u>not</u>, however, reassert the claims against defendants Cohen, Greenberg, Cutaia, Faustino, Jones-Brown, or Debonis, because a liberal interpretation of the amended complaint "gives [no] indication that a valid claim might be stated" against these defendants, <u>Shabazz v. Bezio</u>, 511 F. App'x at 31, and, in any event, plaintiff has "agree[d] to waive" his claims against them. (Pl. Opp. at 2).

Finally, the Court cautions plaintiff that, although defendant Tuohy has not moved to dismiss the complaint, his discrimination and retaliation claims against her suffer from the same defects as his claims against Seiden, Raho, and Purvis. If plaintiff declines to file a motion for leave to amend, or if the proposed second amended complaint fails to include factual allegations sufficient to show Tuohy was personally involved in the alleged unlawful conduct at issue here, the Court will <u>sua sponte</u> dismiss plaintiff's claims against her.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiff's claims against Gheewalla for retaliation under Section 1981 and aiding and abetting retaliation under the NYSHRL may proceed. All other claims against the Moving Defendants are dismissed.

Plaintiff's cross-motion for leave to amend is DENIED WITHOUT PREJUDICE to refiling a motion for leave to amend accompanied by a proposed second amended complaint. By <u>January 31, 2023</u>, plaintiff must notify the Court by letter whether he intends to so move. If plaintiff chooses to move to amend, he must do so by no later than <u>fourteen days</u> after notifying

the Court of his intent to do so. Within fourteen days of such motion, the Board Defendants may either: (i) notify the Court by letter that they consent to the proposed amendment; or (ii) file a memorandum of law, not to exceed ten pages, setting forth the grounds for their opposition.

Defendant Gheewalla's deadline to respond to the first amended complaint is stayed pending further order of the Court.

The Clerk is instructed to terminate Evan J. Cohen, Cheryl Greenberg, Peter Cutaia, Maria Faustino, Dania Jones-Brown, and Christina Debonis as defendants in this action.

The Clerk is further instructed to terminate the motion. (Doc. #47).

Dated: January 17, 2023
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge